SPENCER v. LEVY et al. (No. 5422.)

(Court of Civil Appeals of Texas. Austin. Dec. 23, 1914. Rehearing Denied Jan. 27, 1915.)

1. BOUNDARIES ⬯7 — LOCATION — SUBSEQUENT DEED.

Calls in a later deed cannot aid in fixing the location of the corners in a former one.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 58–65; Dec. Dig. ⬯7.]

2. COUNTIES ⬯110—CONVEYANCE OF LAND— AUTHORITY OF JUDGE.

Where it did not appear that a county judge, before executing a deed to land belonging to the county, had been appointed by the county court to sell the land, or that the sale was made at public auction as required by Rev. St. 1911, art. 1370, the deed did not convey the county's title.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 170–173; Dec. Dig. ⬯110.]

3. EVIDENCE ⬯372 — ANCIENT DEED — PRESUMPTION OF AUTHORITY.

Lapse of 30 years since the execution of a deed by a county judge to county land is not sufficient to create a presumption, in the absence of all record evidence, that the judge was authorized by the commissioners' court to sell the land, etc.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. ⬯372.]

4. TRESPASS TO TRY TITLE ⬯35 — TITLE — COMMON SOURCE—PLEADING.

It is not necessary that a common source of title be pleaded, where it is proven by undisputed testimony.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. ⬯35.]

5. TRESPASS TO TRY TITLE ⬯18—TITLE IN THIRD PERSON.

Where both parties claimed under a common source of title, it would not avail defendants to show a superior outstanding title in a third person with which defendants were not connected.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 21; Dec. Dig. ⬯18.]

6. MUNICIPAL CORPORATIONS ⬯663 — STREETS—RIGHT OF ABUTTING OWNERS.

A right to the unobstructed use of streets is appurtenant to the right of possession of the adjoining land, and hence the right of the possessor to use the streets is not dependent on proof of title to such adjoining land in fee.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. ⬯663.]

7. EVIDENCE ⬯183—BEST AND SECONDARY —LOSS OF ORIGINAL.

What is sufficient proof of the loss of an original document or inability of the party to produce it is largely a matter for the discretion of the trial court, and if a reasonable effort has been made to obtain the original, and there is no suspicion that the copy may differ therefrom, it should be admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. ⬯183.]

8. EVIDENCE ⬯183 — BEST AND SECONDARY —MAPS—CITY ADDITION.

Where a map of a city addition belonging to a railroad company had never been filed, and inquiry for the original was made at the city clerk's office, at the office of the railroad company, at the mayor's office, and of the attorneys representing defendants, without success, and it did not appear that any one who might be expected to have knowledge of the whereabouts of the original had ever seen it, unless the one produced from the railroad office was an original, the court did not abuse its discretion in admitting it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 605–637; Dec. Dig. ⬯183.]

9. EVIDENCE ⬯372 — RECORDS — ANCIENT MAP—CORRECTNESS.

That a map of a city addition belonging to a railroad company had been hanging in the office of the county clerk of the county for at least 30 years, during all of which time it had been the custom of citizens to buy and sell lots in accordance therewith, and its correct-

ness had never been questioned, was strong evidence of its correctness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. ⊚⟷372.]

**10. EVIDENCE ⊚⟷174—BEST AND SECONDARY—MAPS—VELLUM TRACING.**

Where a map of a city addition was a "vellum tracing"—viz., made by drawing the map on cardboard, and then tracing it on vellum—it was an original, and not a copy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 561–564, 566–569; Dec. Dig. ⊚⟷174.]

**11. MUNICIPAL CORPORATIONS ⊚⟷663 — STREETS—RIGHT TO USE.**

Where plaintiff purchased city lots with reference to a map of the addition, by which the lots were shown to abut on certain streets, plaintiff acquired the right to use the streets free from obstructions, unless barred by limitations, under the rule that an abutting property owner has a property interest in the street, whether opened or not.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. ⊚⟷663.]

**12. DEEDS ⊚⟷112—MAPS—CONVEYANCE.**

A conveyance of a city lot with reference to a map of the city addition containing it was a conveyance of all the appurtenances ascertainable by the map.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 323, 324; Dec. Dig. ⊚⟷ 112.]

**13. DEEDS ⊚⟷112—MAPS—REFERENCE.**

Where a conveyance is made with reference to a map, it is immaterial who made the map, since, by referring to it in the deed, the grantor adopts it, and this though it be not recorded, nor a copy produced, if the location of the property can be proven in accordance with the contiguous streets located on the map by any method recognized by law.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 323, 324; Dec. Dig. ⊚⟷ 112.]

**14. ADVERSE POSSESSION ⊚⟷8 — STREETS — STATUTES.**

Rev. St. 1911, art. 5683, providing that no person shall ever acquire by occupancy or adverse possession any right or title to any portion of a road, street, sidewalk, etc., prevents limitations from running as to streets, either in favor of or against any person.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. ⊚⟷8.]

**15. MUNICIPAL CORPORATIONS ⊚⟷692 — STREETS—OWNERSHIP AND FEE.**

Though one acquires a fee to a street, he does not thereby acquire the right to obstruct the same so as to interfere with its use by abutting owners.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1493; Dec. Dig. ⊚⟷692.]

**16. ADVERSE POSSESSION ⊚⟷100—POSSESSION OF PART—EXTENSION OF WHOLE.**

The rule that adverse possession of a part of a tract is sufficient to give possession of the whole applies only where the possessor holds under a deed, and the party holding a superior title or right is not in actual possession of any part of the land included in his grant; but, where he is in actual possession of any part of his land, entry on a part thereof by one claiming under a deed dispossesses him only to the extent that actual possession is taken and held by the disseisor.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. ⊚⟷100.]

**17. PLEADING ⊚⟷113 — ANSWER — GENERAL DENIAL.**

Rev. St. 1911, art. 1902, providing that defendant in his answer shall plead to each fact alleged in plaintiff's petition, and either admit or deny the same, or deny that he has any knowledge or information thereof sufficient to form a belief, and any fact not denied, or as to which defendant does not deny that he has any knowledge or information sufficient to form a belief, shall be taken as confessed, abolishes a general denial.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. ⊚⟷113.]

**18. PLEADING ⊚⟷121— ANSWER—DENIALS—INFORMATION AND BELIEF.**

Rev. St. 1911, art. 1902, requires that the answer shall admit or deny each fact alleged in the petition, or deny that defendant has any knowledge or information thereof sufficient to form a belief. Paragraphs 14 and 15 of plaintiff's petition alleged facts showing title to the land in controversy under the 5 and 10 year statutes of limitations. Paragraph 16 related to the location and width of B. street, and paragraphs 17, 18, 19, 20, and 21 related to the location of D. street, certain of the lots in controversy, their improvements, the convenience and necessity of the streets as means of access to the lots, and plaintiff's purchase of the lots with reference to the streets and alleys as laid out on a certain map. Defendants' answer alleged that, as to paragraphs 14 and 15, "defendants aver that' they have no information or knowledge sufficient to form a belief as to the facts therein averred," and also contained a similar allegation as to paragraphs 16, 17, 18, 19, 20, and 21. *Held*, that such allegation was only a statement that defendants had no such information as would enable them to form a belief as to whether plaintiffs had title both as to the 5 and 10 year statute, but was not a denial of sufficient information to form a belief as to one or the other, nor as to separate facts alleged in the other paragraphs, and was therefore insufficient.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 245–248; Dec. Dig. ⊚⟷121.]

**19. PLEADING ⊚⟷121—ANSWER — DENIAL OF KNOWLEDGE OR INFORMATION—FORM.**

Under Rev. St. 1911, art. 1902, providing that defendant shall plead to each fact alleged in plaintiff's petition, and either admit or deny the same, or deny that he has any knowledge or information thereof sufficient to form a belief, the proper form of denial of information is: "As to the allegations of fact in paragraph —— of plaintiff's petition herein the defendant says that it is not true, as therein alleged, that [stating eo nomine the facts which he denies], or that defendant does not know whether the allegations of fact that [stating such facts] are true or not, and that he has no such information as would enable him to form a belief in reference thereto."

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 245–248; Dec. Dig. ⊚⟷121.]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by C. B. Spencer against M. Levy and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

R. L. Neal and W. L. Eason, both of Waco, for appellant. Spivey, Bartlett & Carter, of Marlin, for appellees.

## Findings of Fact.

JENKINS, J. The land in controversy herein is the wedge-shaped tract north of

---

lots 2, 3, 4, and 5 in block 5, and that lying south of lot 5 west of the Roberts tract, north of lot No. 1 in block No. 6, and east of a line extending from the south or southwest corner of lot No. 1 to the south or southeast corner of lot No. 5, as shown on the following sketch:

From the evidence shown by the statement of facts herein, we find the following facts:

(1) The land in controversy, as well as said lots 3, 4, and 5, are a part of the W. M. Reed tract of 6 $7/10$ acres.

(2) The boundary between the Reed and the Roberts tracts is a line beginning at a

The dotted lines show the boundaries of the Roberts tract, and a portion of the boundaries of the Reed tract.

Appellant, claiming to be the owner of lots Nos. 3, 4, and 5 in block No. 5 of the Railroad addition to the city of Marlin, brought suit to remove obstructions placed by appellees in what appellant alleged to be parts of Barton and of Depot streets, in said addition.

Appellees admitted that they had fenced the ground described in appellant's petition, but denied that the same were, or had ever been, any part of any public street, and, if so, they had ceased to be such by reason of their abandonment, and they aver that appellees had title to the same both by deed from the city of Marlin and by limitation. It was agreed that Falls county is the common source of title of the parties hereto. Appellant claimed title by limitation as well as by deed.

point on the south side of Live Oak street, 161 vrs. plus 30 feet from the northeast corner of the Coleman tract, and running thence south 140 vrs. (388.8 ft.) to the southwest corner of said Roberts tract on the east line of the Reed tract.

(3) The Reed tract formerly belonged to Falls county, and W. M. Reed became the owner thereof under a regular chain of title by deeds duly executed and recorded, if F. W. Capps, chief justice of said county, had legal authority to execute the deed which was executed by him to Frank Barnes January 25, 1883.

(4) Appellant is the owner of whatever title W. M. Reed had to lots Nos. 3, 4, and 5 shown on said sketch, under a regular chain of title by deeds duly executed and recorded.

(5) Appellant has title to said lots under both the five and the ten year statutes of limitation.

(6) On February 11, 1870, W. M. Reed and

wife made and executed to John T. Flint, trustee, a deed to said 6 7/10 acres called herein the Reed tract, which, omitting formal parts and description of land conveyed, reads as follows:

"For and in consideration that the Waco Tap Railroad Company has agreed to change the depot grounds from the point near the King house at the south of Marlin to a point near our land, or upon it in the east of Marlin to be extended according to a plat made by Capt. Alexander on the line of the road as therein mapped, running about S. 40° E. across the land of Coon, Parker, Barton, Shelton, and our lands, do hereby bargain sell and convey, in consideration of the premises aforesaid to John T. Flint, trustee of ourselves and the said Waco Tap Railroad Company, the following real estate, to wit: [Here follows description.] To have and to hold, use, and enjoy the same to the said John T. Flint, trustee as aforesaid, his heirs and assigns forever, with the privileges to the same belonging subject to the following use and trust to wit: That upon the location by the said company of its railroad depot grounds on the line of said road in whole or in part where it passes through the lands of Parker, Coon, Shelton, et al., the said John T. Flint shall convey to said railroad company the right of way across said land with the necessary and usual depot grounds for buildings of the company, side tracks, and engine house if needed first, and then survey off the balance of the land hereby conveyed into town lots for business or dwelling houses 50 feet front and 150 feet in depth with such fractional lots as may be necessary in subdividing said land, and also with necessary alleys and streets, which said alleys and streets the said trustee shall convey to the public use, and then the said trustee shall sell the said lots and fractional lots for the best price he can at public or private sale, shall pay over the proceeds of such sale on demand as follows, to wit: To the grantors herein one half of the same, and the other half to the said Waco Tap Railroad Company."

Said deed was duly recorded February 18, 1870.

(7) Some time prior to October 23, 1871, Flint mapped, or caused to be mapped, the Railroad addition to the city of Marlin, and sold the lots therein, including lots 1, 2, 3, 4, and 5 in block No. 5 of said addition by and with reference to said map.

(8) Said lots 1, 2, 3, 4, and 5 in block 5, and lot 1 in block 6, of said Railroad addition, were placed and mapped on said map, as were also Barton and Depot streets, as shown on the above sketch, and, as thus mapped, lots 3, 4, and 5 were each 50x150 feet, and fronted on Barton street, and the south side of lot 5 was its full length on Depot street. As thus mapped, Barton street was 70 feet wide, Depot street was 140 feet wide, and the alley in the rear of said lots was 20 feet wide.

(9) On October 23, 1871, the city of Marlin, by ordinance, recognized the existence of said Railroad addition, and the dedication of the streets and alleys therein, and accepted the same, as shown by the map of said addition made by said Flint, or under his authority.

(10) There is no evidence that Flint, or any one else, ever acknowledged said map, as required under the registration laws, or that the same was ever filed or recorded in the office of the county clerk of Falls county.

(11) What is called herein the Wescott map has thereon a correct copy of the original map of the said Railroad addition, and the vellum map found in the railroad office at Marlin, if it is not an original map of said addition, is a correct copy of same.

(12) Lot 3 in block 5 in Railroad addition was deeded to appellant's father, whose estate appellant has, April 21, 1873, as such lot, as shown by said map of the Railroad addition to Marlin. On February 1, 1878, lot No. 4 in block No. 5, in said Railroad addition was conveyed to appellant's father, and on February 28, 1880, lot No. 5 in block No. 5 in the town of Marlin, "as represented on the map thereof drawn by ——— and recorded in Book ———, page ———, of records for said county. References hereby made for particular description." The lot thus conveyed is lot 5 in block 5, Railroad addition to the town of Marlin, as shown by the map of said addition.

(13) C. B. Spencer, the father of appellant, bought said lots with reference to the map of said Railroad addition. He built his house fronting the alley, which he widened to 30 feet, and built his barn and stock lot on the front line of lot No. 3 on said Barton street, where they still are.

(14) Neither Barton nor Depot streets were ever opened or traveled as streets on the portions of same adjoining appellant's said lots, but appellant's father used Barton street as a means of egress and ingress to his barn from the time he erected the same, which was soon after he purchased lot No. 3, until recently, when the same was entirely fenced up by appellee Mrs. Owens. There is a deep ditch running across Depot street on the east line of the railroad right of way, which prevents its being used as a crossing for vehicles.

(15) The closing of Barton and Depot streets deprives appellant of all access to his barn and stock lots, except through his premises from the alley, and materially depreciates both the market and rental values of his said lots.

(16) Neither Flint, nor any one else, was authorized to extend Barton street or Depot street upon or across the Roberts tract; nor have any of the owners of said tract ever ratified said map in so far as it extends said streets or either of them upon or across said Roberts tract.

(17) The Roberts tract was fenced at the time the Railroad addition was mapped, and has remained fenced ever since, except that the fence was a few feet east of the west line of same, and left a passway between the west line of said tract and the east corner of lot No. 5. This passageway has had a gate across it part of the time, just when or for what time is not made definitely to appear.

(18) The city of Marlin deeded the wedge-shaped tract to appellee M. Levy, with a life

estate in an undivided one-half interest to appellee Mrs. Owens, on July 3, 1884, which deed was duly recorded October 8, 1884.

(19) Prior to the execution of the deed mentioned in the preceding paragraph hereof, Mrs. Owens had fenced the eastern part of said wedge-shaped tract, and used the same as a garden, but did not claim the same. The evidence does not show the location of the western line of said fence.

(20) From the time of the execution of the deed mentioned in paragraph 18, supra (July, 1884), Mrs. Owens and Levy have claimed said wedge-shaped tract, and have rendered the same for taxes and paid all taxes thereon.

(21) Some time, more than five years and less than ten years, before the trial hereof, Mrs. Owens moved the west line of her fence to the west line of said wedge-shaped tract. The evidence does not indicate with greater certainty than above stated when all of said wedge-shaped tract was inclosed by appellees.

(22) On August 28, 1893, the mayor of the city of Marlin, in obedience to an order of the city council, deeded to M. Levy that portion of Depot street lying south of lot No. 5 in block No. 5, and north of lot No. 1 in block No. 6, of the Railroad addition to Marlin, and west of the Roberts tract and east of a line drawn from the south corner of said lot 5 to the west corner of said lot No. 1. Said deed shows upon its face that the land therein conveyed is a part of Depot street in the Railroad addition to Marlin.

(21) The appellee fenced the north part of the land thus conveyed to him soon after purchasing same, and more than ten years before the institution of this suit, but just what part is not made to appear. Subsequently, date not shown, he fenced the remainder of said tract.

(22) Appellee Levy has claimed that portion of Depot street conveyed to him, as above stated, from the date of his said purchase (August, 1893), and has rendered the same for taxation, and has paid all taxes thereon.

## Opinion.

In the logical order, though not in the order of the assignments of error, the first question presented for our consideration is the location of the boundary line between the Reed and the Roberts tracts; the appellant contending that, by reason of the fact that the northeast corner of the Roberts tract is on what is known as the 320 line, and that the deed for the Roberts tract calls for same to front 39 vrs. (108⅓ feet) on Live Oak street, the Reed tract extends to a point 108⅓ feet west of said 320 line, which would give it an excess of 20⅔ feet. There is no excess in the Reed tract.

[1] The deed to same was executed prior to execution of the deed to the Roberts tract, and the calls in the latter deed do not aid in fixing the location of the corners in the former deed. State v. Post, 169 S. W. 401.

The deed to the Reed tract calls to begin 30 feet east of the northeast corner of the Coleman tract, and to run thence, reversing the calls, east 161 vrs. There are no calls in the Reed deed for marks, natural or artificial, that would aid in locating its northeast corner, and no evidence as to where the survey was actually made on the ground; hence its northeast corner must be fixed by running from the Coleman northeast corner east 161 vrs., plus 30 feet. State v. Post, 169 S. W. 401.

The Roberts deed calls to begin 161 vrs., plus 30 feet, east of the Coleman northeast corner, which, as we have seen, is the northeast corner of the Reed tract, and to run thence east 39 vrs. to the 320 line. If by reason of the 320 line being well established, this call gives the Roberts tract an excess, that is no concern of the owners of the Reed tract.

[2] We are of the opinion that the deed executed by the Chief Justice of Falls county to Frank Barnes, under whom W. M. Reed claimed, did not convey title to the grantee therein, for the reason that it does not appear that he was appointed by the commissioners' court to sell said land, nor that such sale was made at public auction. R. S. art. 1370; Ferguson v. Halsell, 47 Tex. 421; Llano County v. Knowles, 29 S. W. 549; Logan v. Stephens Co., 81 S. W. 109; Bell County v. Felts, 120 S. W. 1065.

[3] Appellant contends that the power to execute said deed should be presumed, for the reason that said deed is over 30 years old. This is true if it was a deed purporting to have been executed by a private person under a power. It would in such event, after the lapse of 30 years, be presumed that the power recited in the deed existed, but that there had been a failure to record the same, and that it had been lost. Watrous v. McGrew, 16 Tex. 513; Dailey v. Starr, 26 Tex. 566; Hooper v. Hall, 35 Tex. 88; Johnson v. Shaw, 41 Tex. 428; Verimendi v. Hutchins, 48 Tex. 552; Rigsby v. Galceron, 15 Tex. Civ. App. 379, 39 S. W. 650; McCoy v. Pease, 17 Tex. Civ. App. 303, 42 S. W. 660. At least, the jury would be authorized, from the age of the deed and possession thereunder, to infer that such was the fact. But the deed in question does not recite any such authority. Besides, a different rule applies where such authority must emanate from a court, whose proceedings are required by law to be made matters of record. Tucker v. Murphy, 66 Tex. 359, 1 S. W. 76; French v. McGinnis, 10 Tex. Civ. App. 7, 29 S. W. 656; Hill v. Templeton, 29 S. W. 537.

There is, however, another common source, not so far back in the chain of title, under which both parties claim, viz., W. M. Reed. Appellant put in evidence a consecutive chain

of title under Reed. Appellees did likewise, viz., a deed from Reed to Flint, trustee, from Flint to the city of Marlin, and from the city of Marlin to appellees.

[4] It is true that this common source was not pleaded, but it need not have been. 'Stegall v. Huff, 54 Tex. 193. Nor was it admitted, but it was proven by the undisputed testimony, and it was shown that each party claimed paper title from this source, and that neither of the parties claimed any other title, except by limitation.

[5] Such being the fact, it could not avail the appellees to show in some one else a superior outstanding title, with which they were in no wise connected.

[6] We do not think, however, that appellant was required under the pleadings and the facts proven herein to show a fee-simple title in himself to lots 3, 4, and 5. He and those under whom he claims were, and for more than 30 years had been, in the peaceable and adverse possession of said lots, claiming the same as their own, and paying all taxes thereon. Their right to such possession does not appear to have ever been called in question, and is not questioned by appellees in this suit. Appellees only deny appellants' right to the land adjoining said lots, and claimed by him to be streets. If they are streets, appellant is entitled to the unobstructed use of same, as appurtenant to his right to the possession and use of said lots. Besides this, appellant's title had become perfect under both the 5 and 10 year statute before the first deed was executed to appellees.

That there is a Railroad addition to the city of Marlin is proven by the uncontroverted evidence herein. That said addition was mapped into blocks, lots, streets, and alleys is implied by the very term "addition" to a town or city. That John T. Flint, or some one under his direction, made a map of said Railroad addition is evidenced by the following facts:

The deed to him was executed upon the express trust that, after deeding to the railroad company its right of way through said land and sufficient grounds for its depot and engine house, he would lay off the remainder in blocks, lots, streets, and alleys, a half interest in said lots to be for the benefit of Reed, and the other half for the benefit of the railroad company. The city of Marlin executed to Flint, "trustee," a deed to certain alleys, and accepted from Flint a deed to the streets and alleys in the Railroad addition to Marlin. Flint, on August 22, 1871, executed the following deed:

"Know all men by these presents that I, John T. Flint, of said county and state, holding title to lands as trustee by several deeds of conveyance by M. Barton, B. Coon, L. B. Barton and wife, L. Patilla and others, William Reed and wife, William Shelton and wife, E. Durr and wife, L. G. Scogin and wife, and J. E. Wood, for and in consideration that the Waco & Northwestern Railroad Company has agreed to locate, and now has permanently located, its line of railroad through the land conveyed to me by said deeds of trust, and has fixed the depot to the same at the point in said deeds of trust, do hereby transfer and convey to the Waco & Northwestern Railroad Company the right of way to construct their railroad through said land being a strip of land 70 feet wide from the point where it enters the I. M. Barton lower tract north 40 west (without variation) to the point where the line goes out at the L. G. Skoggin tract in and through the part of the town of Marlin, Falls county.

"To have and to hold the same to the said Waco & Northwestern Company and their successors forever with the privileges and appurtenances to the same belonging, and I hereby warrant the title of the same so far as the title lies in me the trustee as aforesaid, and no further.

"In testimony whereof I have hereunto set my hand and scroll for seal this 22d day of August, 1871.　　　　John T. Flint, Trustee."

Said deed was duly recorded June 10, 1884.

On April 24, 1873, Flint executed the following deed:

"The State of Texas, Falls County:

"Know all men by these presents that I, John T. Flint, trustee of W. M. Reed, under deed dated the 11th day of February, 1870, recorded in Book H, pages 422 and 423 of the records and deeds of Falls county and the county of McLennan and the state of Texas, for and in the consideration of $300 to me in hand paid by A. Grosebeck, trustee for the Waco & Northwestern Railroad Company, and for partition of Reed's property, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, under the said A. Grosebeck, trustee for the following real estate, situated in the county of Falls in the state of Texas, to wit: Lot 4, 5, 6, 7, and 8 in block 5, and also the small fractional block D in the Railroad addition to the town of Marlin out of the property conveyed to me by the said deed of trust, also lot 9 and 10 in block 6 in said Railroad addition.

"To have and to hold all and singular the premises above mentioned unto the said A. Grosebeck, his heirs and assigns, to hold and dispose of in trust of the Waco & Northwestern Railroad Company, their successors and assigns forever, hereby conveying unto the said A. Grosebeck, his heirs and assigns, to hold and dispose of for the use of the Waco & Northwestern Railroad Company, their successors and assigns, all right and title and interest in said land vested in me by virtue of said deed of trust."

Said deed was duly recorded January 19, 1874.

On January 30, 1874, the said Grosebeck executed the following deed:

"State of Texas, Falls County:

"Know all men by these presents that I, A. Grosebeck, trustee, and in whom is vested the legal title to property hereinafter described by deed from John T. Flint on record in the present office of Falls county, in consideration of one dollar to me in hand paid and other valid consideration, granted, bargained, sold, and conveyed, and by these presents grant, bargain, sell, and release, unto the Houston Texas Central Railroad Company, the following lots or parcels of land situated in the county of Falls in said state, and in what is known as the Railroad addition in the town of Marlin: All of fractional block No. 2, lots 6, 7, 8, 9, and 10 in block 3, all of block 4, lots 5, 6, 7, and 8 in block 5, all of block 10, block 5, and block 16, lots 1, 2, 3, 4, and 5 in block 21, less block 2, which has been by me reconveyed to J. E. Wood, lot 9 and 10 of block 22, lot 1, 2, 3, 4,

and 5 in block 25, all of block 26, all of fractional block 30, and all of block D, all that portion of lots 4 and 5 in block 15 not in contact with the property of the west side of the alley in front of D. Coon's property in the original town of Marlin, and that portion of lots 6 and 7 and 8 in block 22 and not in contact with said property, also one acre of land in the town of Marlin, being the same transferred to the undersigned John T. Flint, trustee, by deed on record on pages 521 and 522 book records of Falls county, and being the middle acre of several one-acre tracts in the deed of trust from Thomas J. Reed and wife to John T. Flint, recorded in Book 8, page 429. All of which said lots ·or parcels of land are represented on the railroad map of the said Railroad addition to the town of Marlin to which reference is hereby made for particular description."

That said map included the Reed tract of land is shown by the recitals in the deeds above set out, and by the location on the ground in said Reed tract.

That lots 2, 3, 4, and 5 in block 5 of the Railroad addition to Marlin and Barton and Depot streets upon which they abut, are part of said Railroad addition is shown by the Wescott map, by the vellum map found in the office of the railroad company at Marlin, by the deed from the city of Marlin to M. Levy, as to Depot street, and by the location of said lots on the ground, which is well known and has never been disputed.

The sketch in the finding of facts herein shows said lots and streets as they appear on the Wescott map, except that the land lines of the Reed and Roberts tracts do not appear on said map.

Appellees by cross-assignment contend that it was error to admit the Wescott map in evidence, for the reasons that same showed upon its face to be a copy, that the nonproduction of the original was not accounted for, and that it was not shown to be a correct copy of the original map of the Railroad addition to the city of Marlin.

[7] What is sufficient proof of the loss of an original document or the inability of a party to produce the same is largely a matter in the discretion of the trial court. Wigmore on Ev. vol. 2, p. 1407. If a reasonable effort has been made to obtain the original, and there is no suspicion that the copy might differ from the original, the copy should be admitted. The tendency of modern decisions is to somewhat relax the rules of evidence and to turn on the light.

[8] Inquiry was made for the original map at the clerk's office, at the railroad's office, at the mayor's office, and of the attorneys representing appellees, and, unless the map found in the railroad office was an original, it does not appear that any one who might be supposed to have knowledge as to the whereabouts of the original map ever saw the same. The court did not abuse its discretion in admitting the Wescott map.

That the Wescott map correctly shows the Railroad addition is shown by the following facts: It is a map of the entire city of Marlin. It is not made to appear that there is any recorded map of said city, or any official map of same, unless the one kept in the mayor's office is such. The Wescott map corresponds with the map of Marlin kept in the mayor's office, and, as to the Railroad addition; with the map of said addition found in the railroad office. Two other old maps from the office of attorneys for appellees were exhibited on the trial hereof, and it does not appear that they differed in any respect from the Wescott map; nor does it appear that any one ever saw what purports to be a map or a copy of a map of the Railroad addition which differed in any respect from the Wescott map.

[9] The Wescott map had been hanging in the office of the county clerk of Falls county for at least 30 years, during all of which time it has been the custom of citizens of Marlin to buy and sell lots in said Railroad addition as indicated on said map, and it does not appear that any one ever called its correctness in question. We do not see how evidence of the correctness of said map could reasonably be made stronger. It purports to have been made in 1871. If the man who made it had testified on the trial hereof that he correctly copied the original map, this would have been only his memory of that event, after the lapse of more than 40 years. That it has stood the test of time as above stated we think is stronger evidence than would have been the memory of the man who made it.

[10] Objection was made to the introduction in evidence of the map found in the office of the railroad company for the same reasons as to the Wescott map. The original of this map has been sent up with the record. It purports to be a vellum map of the Railroad addition. There is nothing written upon it to show when or by whom it was made; but it has the appearance of being very old and much worn, and coming, as it does, from the custody of the railroad company, that originally owned a half interest in said addition, we believe that it should be considered an original map of said addition. One of the witnesses, a surveyor, describes it as "a vellum tracing." This is just what it should be, if it is an original. Such maps are made by drawing them on cardboard and then tracing them on vellum. The cardboard upon which the tracing is made occupies the same place in map making as does the negative in photography. Each tracing therefrom is as much an original as is each photograph printed from the same negative an original photograph. It follows, of course, that there may be any number of original maps. Had one of the vellum maps been signed and properly acknowledged by the party or parties thereunto authorized, this would have been sufficient proof that it was an original. But, finding such a map in the proper custody, no other proven original being produced or be-

ing proven to have ever been in existence, we think is sufficient proof that it is an original map.

But, aside from those maps, the deed executed by the city of Marlin to appellee Levy August 28, 1893, and hereinbefore set out, identifies the land therein conveyed as being a part of Depot street, upon which lot No. 5, block 5, in the Railroad addition to Marlin, abuts. It is to be presumed that appellees, when they bought from the city of Marlin, examined the records to ascertain what, if any, title the city had, and, if so, they learned that both the wedge-shaped tract and the other tract had been deeded to the city for street purposes, and that it had no other title. Claiming as they do under the deed made to the city by Flint, trustee, they are chargeable with notice of the contents of said deed.

[11] The appellant being the owner of lots Nos. 3, 4, and 5 in the Railroad addition to the city of Marlin, and having bought the same with reference to the map of said addition, and as said lots, as shown by said map, as well as by other evidence herein, abut upon Barton and Depot streets, it follows that he is entitled to the use of said streets, free from all obstruction thereon, unless such right is barred by the statute of limitations by reason of the facts found and hereinbefore set out. An abutting owner has a property interest in a street. Bond v. Railway Co., 15 Tex. Civ. App. 281, 39 S. W. 978; Stevens v. Dublin, 169 S. W. 190; Ort v. Bowden, 148 S. W. 1148. It matters not that the streets are not yet opened. Oswald v. Grenet, 22 Tex. 100; Lamar County v. Clements, 49 Tex. 354.

[12] The conveyance of each lot with reference to the map is a conveyance of all of the appurtenances ascertainable by the map. Corsicana v. Zorn, 97 Tex. 323, 78 S. W. 924.

[13] Where a conveyance is made with reference to a map, it is immaterial who made the same. By referring to it in the deed, the grantor thereby adopts it. It is not necessary that a map be recorded, nor that a copy thereof be produced, if it can be proven in any manner recognized by law where the particular lot or lots and the streets contiguous thereto are located according to such map. In this case an acceptance by the city of Marlin of the streets and alleys in the Railroad addition was shown, but such acceptance was not necessary in order to fix appellant's rights. It was only necessary to show that he or those under whom he claims bought with reference to such streets and alleys. Corsicana v. Zorn, supra; Albert v. Railway Co., 2 Tex. Civ. App. 664, 21 S. W. 779; Martinez v. Dallas, 102 Tex. 54, 109 S. W. 289, 113 S. W. 1167; Krause v. El Paso, 101 S. W. 832.

[14] The land conveyed to appellees and occupied by them being public streets, we do not think limitation as to the same ran in their favor. Article 5683, R. S., reads, in so

far as the same is applicable to this case, as follows:

"Nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any portion of any road, street, sidewalk," etc.

It is the contention of the appellees that this article does not apply in favor of an individual. There is a statement in Cocke v. Railway Co., 46 Tex. Civ. App. 363, 103 S. W. 409, which seems to support this contention, but, as the fact was found in that case that possession had not been continuous for the requisite period, the point was not involved. We think that the meaning of said statute is that limitation as to a street does not run in favor of any person nor against any person. Richardson v. Salt Works, 20 Tex. Civ. App. 486, 49 S. W. 648; San Antonio v. Rowley, 48 Tex. Civ. App. 376, 106 S. W. 754; Williams v. Galveston, 58 S. W. 552.

[15] But, even if appellees had acquired title to the fee in said streets, they would have no right to obstruct the same so as to interfere with the use thereof by the abutting owners. Appellant does not sue herein to recover the fee-simple title to said lands, but as one of the public whose rights are specially interfered with by the obstructions placed on said streets by appellees; he seeks only to have the same removed.

Had article 5683, supra, never been enacted, the evidence herein is not sufficient to enable the appellees to avail themselves of the ten-year statute of limitation as to either of the tracts of land involved herein, nor of the five-year statute as to Depot street. The jury found in favor of appellees as to both the five and ten year statutes.

[16] In submitting these issues the court instructed the jury that possession of a part of said tracts was sufficient to support the statute. This is true where a party takes possession under a deed, and the party holding the superior title or right is not in the actual possession of any part of the land included in his grant; but, where he is in actual possession of any part of his land, entry on a part thereof by one claiming under a deed dispossesses him only to the extent that actual possession is taken and held under said deed. Anderson v. Jackson, 69 Tex. 347, 6 S. W. 575. The deeds to appellant's father conveyed the fee in the adjoining streets to the center thereof, and, being in actual possession of his lots, he was and remained in the constructive possession of the land to the center of the street, as owner of the fee, until actually dispossessed. The evidence shows actual possession of only a part of said tracts for ten years, without showing what part. It shows actual possession of all of the wedge-shaped tract for five years.

This case was submitted to a jury upon special issues, and their findings upon same were sufficient to support the judgment of the

trial court. It is apparent from the findings of fact made by us, and from statements in this opinion, that we hold that the findings of fact so made by the jury, in so far as they were different from the facts found by us, are not supported by the evidence, but are contrary to the undisputed evidence herein.

The pleadings herein were filed subsequent to the enactment of article 1902, R. S. By assignments of error Nos. 10, 11, and 12 it is made to appear that appellant excepted to paragraphs 1, 6, and 7 of appellees' answer, for the reason that the same did not specifically deny the facts alleged in appellant's petition, and did not aver that appellees were without sufficient information to form a belief with reference thereto.

[17] Article 1827, R. S., as amended by Acts 1913, p. 256 (Vernon's Sayles' Ann. Civ. St. 1914), requires that:

"Each fact going to make up such [plaintiff's] cause of action and other allegations shall be pleaded by separate paragraph and each paragraph numbered consecutively."

Said article 1902 reads, in part, as follows:

"The defendant in his answer shall plead to each fact alleged in plaintiff's petition, and either admit or deny the same, or deny that he has any knowledge or information thereof sufficient to form a belief. And any fact not denied by the defendant or which he does not deny that he has any knowledge or information sufficient to form a belief shall be taken as confessed."

[18] This article abolishes the general denial. The denials must be as specific as the allegations. In the instant case paragraph 14 of the petition alleges facts necessary to constitute title under the five-year statute of limitation. Paragraph 15 alleges the facts necessary to constitute title under the ten-year statute. Paragraph 6 of the answer is as follows:

"That as to paragraphs 14 and 15 the defendants aver that they have no information or knowledge sufficient to form a belief as to the facts therein averred."

Which is, in effect, to say that they have no such information as would enable them to form a belief as to whether plaintiffs have title under both the five and ten year statute; but it is not a denial of having sufficient information to form a belief as to one or the other.

Paragraph 7 of the answer is as follows:

"That as to paragraphs 16, 17, 18, 19, 20, and 21 defendants aver that they have no knowledge or information sufficient to form a belief as to the facts therein alleged."

Paragraph 16 of the petition relates to the location and width of Barton street; paragraph 17 as to the location and width of Depot street; paragraph 18 as to the location and dimensions of lots Nos. 3, 4, and 5; paragraph 19 to the improvements on said lots; paragraph 20 to the convenience and necessity of Barton and Depot streets, as means of ingress and egress to said lots; and paragraph 21 to plaintiff's purchase of said lots with reference to the streets and alleys as laid out and mapped in the Railroad addition.

Appellant excepted to paragraphs 6 and 7 of appellees' answer as above set out. These exceptions should have been sustained.

The object of this statute was to avoid the necessity of the plaintiff's proving what the defendant knew, or had reason to believe, to be true. In other words, its object is to try such issues of fact as are really in dispute between the parties. Under the former practice of putting every allegation of fact in issue under the general denial, much time of the court was needlessly consumed in requiring the plaintiff to prove what the defendant, informed, but not in fact, disputed.

[19] We suggest that the proper form of an answer would be:

"As to the allegations of fact in paragraph —— of plaintiff's petition herein, the defendant says that it is not true, as therein alleged, that [stating eo nomine the facts which he denies], or that defendant does not know whether the allegations of fact that [stating such facts] are true or not, and that he has no such information as would enable him to form a belief in reference thereto."

We do not decide that such form is necessary, because that question is not before us, but an answer somewhat in the form above suggested would certainly be in accord with the spirit of the statute. All that we decide in this case is that the answer was not sufficient, and that the exceptions thereto should have been sustained. The answer in this case was sworn to. It appears from the statement of facts that appellee Levy lives, and for many years has lived, within a few hundred feet of where appellant's father has resided for many years. From such fact it might be concluded that appellant could have proven by said appellee the fact of the residence of his father on said lot, and the kind, location, and probable value of the improvements thereon, and yet the answer would seem to deny any knowledge of such facts. We do not make these observations for the purpose of reflecting upon the veracity of appellee Levy, but we apprehend that, the fact being that defendants have always heretofore denied every allegation in plaintiff's petition by a general denial, which did not mean anything except that plaintiff be required to prove the truth of his allegations, neither litigants nor their attorneys have realized that the statute requiring specific denials means anything in particular. We think that it means all that it says, and that defendants should be cautious in making denials of allegations of fact contained in plaintiff's petition.

For the reason that the facts undisputedly proven show that the appellant is entitled to the relief for which he prays, the judgment of the trial court is reversed, and judgment is here rendered for appellant that the appellees be perpetually enjoined from placing or maintaining any obstruction on or upon Barton street or Depot street adjoining ap-

·pellant's premises—to wit, lots Nos. 3, 4, and 5 in block 5 of the Railroad addition to the town of Marlin. Said portion of said streets herein referred to are described as follows: Barton street: Beginning at the original northeast corner of the Reed tract, and the original northwest corner of the Roberts tract, a point on the south side of Live Oak street, 161 vrs., plus 30 feet, east of the northeast corner of the Coleman tract; thence south with the west line of said Roberts tract to the intersection of same with the northeast line (projected, if necessary) of said lot No. 5, near the east corner of same; thence N. 30° W. with the northeast line of said block 5 to Live Oak street; thence east 70 feet to the beginning. Depot street: Beginning at the south or southwest corner of said lot No. 5;. thence N. 60° E. with the line of said lot to the west line of the Roberts tract; thence south with said Roberts tract to the intersection of same with the northwest line of lot No. 1 in block No. 6 of the Railroad addition to Marlin; thence S. 60° W. to the south corner of said lot No. 1; thence N. 30° W. at right angles across said street 140 feet to the beginning.

Reversed and rendered.

RICE, J., not sitting.