STEVENS v. CITY OF DUBLIN et al.
(No. 8005.)

(Court of Civil Appeals of Texas. Ft. Worth. April 25, 1914.)

1. EMINENT DOMAIN (§ 2*)—COMPENSATION— "TAKING" OF PROPERTY.

The closing of a street by a city is not a "taking" of property of an abutting owner within Const. art. 1, § 17, providing that no person's property shall be taken, etc., for any public use without adequate compensation being made, and, when taken, except for the use of the state, such compensation shall be first made, etc.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 8, pp. 6852–6860, 7813.]

2. MUNICIPAL CORPORATIONS (§ 657*)—STREETS —POWER TO CLOSE STREET.

The general powers of a municipality to control, alter, widen, etc., and, in the interest of public safety, to temporarily close a street do not authorize a permanent closing of a public street to the damage of an abutting owner.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 844, 1429, 1496; Dec. Dig. § 657.*]

3. MUNICIPAL CORPORATIONS (§ 57*)—POWERS.

A municipality has such powers only as are conferred upon it, or such power as exists by necessary implication from powers given.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 144, 148; Dec. Dig. § 57.*]

4. MUNICIPAL CORPORATIONS (§ 657*)—POLICE POWER—CLOSING STREET.

A city under the police power, given by Rev. St. tit. 22, c. 14, could not close a street because its continued existence was dangerous to school children attending a school abutting thereon, as the general public was only affected indirectly by the supposed danger.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 844, 1429, 1496; Dec. Dig. § 657.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by Carl Stevens against the City of Dublin and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Keith & Johnson, of Stephenville, for appellant. Hickman & Bateman and E. E. Solomon, all of Dublin, for appellees.

CONNER, C. J. The city of Dublin, incorporated as a municipality under the general laws of this state, acting in the interest of and for the benefit of the Dublin Independent School District, incorporated for public free school purposes, passed an ordinance which in terms authorized the school district to close that portion of College street in said city which extends between two blocks of land owned and used by the school district. College street extends north and south, and is intersected at right angles by streets extending east and west. Vallient street so intersects College street, and extends along the north boundary line of the two school blocks. Across Vallient street appellant owns and occupies as a homestead a quarter of a block, bounded on the west by College street and on the south by Vallient street, and he instituted this suit to enjoin a closing of College street as authorized by the ordinance mentioned. A preliminary hearing upon the facts resulted in a judgment refusing to grant the temporary writ of injunction as prayed for, and the case is now before us for review on an appeal from the order refusing the writ. The case is here submitted upon the trial court's conclusions of fact and law, which, omitting formal parts, are as follows:

"I find from the evidence before me that in the year 1884 J. K. Keith, as guardian of the heirs of Mary E. Keith, deceased, after order of the probate court of Erath county for such purpose, dedicated and deeded to the public, in consideration of the enhanced value of the adjacent blocks and lots in the Keith addition to the city of Dublin, among others, the street in question, known as College street.

"Second. I find that said street has been open and used, worked, graveled, and graded, by the city of Dublin for a period of 20 years.

"Third. I find that plaintiff's property is situated on said street in the manner and in the place shown by the map and plat of said addition, which is hereto attached and found by me to be correct.

"Fourth. That the plaintiff resides upon said lot with his family as a residence, and that it is worth about $1,500.

"Fifth. That plaintiff bought said lot and has lived on the same as a homestead for 12 years, and that he bought the same in reference to the streets and alleys and plot of said addition as shown in the map hereto attached.

"Sixth. That the city of Dublin, on the 18th day of February, 1913, passed an ordinance discontinuing and closing a part of the street in controversy, and granted authority to the trustees of the Independent High School of Dublin to close and fence said street and to embrace it within its school or playgrounds. That the trustees of said Independent School District, who are defendants, are now threatening to, and will, close and fence said street so as to embrace it within the school ground as indicated on the map hereto attached. A copy of said ordinance of the city of Dublin relative to this street is made a part of the answer herein, and is referred to.

"Seventh. That if said street is closed as contemplated by the defendants, the north side of the two blocks of the said school property will present a closed front to plaintiff's residence of 550 feet or more, his said residence being near the center of said inclosure with Vallient street, a 50-foot street, running east and west between him and said inclosure.

"Eighth. That if said street is closed as proposed, plaintiff's property will be damaged in the sum of $200.

"Ninth. That in going from plaintiff's residence to the southern part of Dublin, in which his relations reside and to the depot, etc., plaintiff and his family if said street is closed, will have to travel west on Vallient street around said high school block, or east and then south around said school property.

"Tenth. That said street is now constantly used by plaintiff, his family, and a large number of people going into the southern and middle portion of Dublin, and has been so used for 20 years.

"Eleventh. The court further finds the allegations of defendants, the Independent School District of Dublin, in regard to the uses to which said defendant's property is put, the value and extent of improvements thereon, number of pupils attending the school, and the alleged danger to the said pupils occasioned by the open street which said defendants, together with the other defendant, are threatening to close, to be true. And further finds that the use of that portion of Post Oak or College street sought to be inclosed within the school grounds is necessary to give adequate room for exercise and playgrounds for the pupils attending said school. That without the use of said street in connection with said playground the remaining grounds belonging to the Independent School District, and separated as they now are by said street, are entirely too limited to enable the pupils of said school to indulge in proper and suitable exercise for the preservation of their health and for their physical development.

"Twelfth. I further find that plaintiff owns no part of the fee in that portion of the street sought to be inclosed, that he is not an abutting owner, and that his land does not abut on that portion of the street sought to be inclosed, but that his property is separated from the two blocks sought to be connected and is situated north of each of said blocks a distance of 50 feet, and that a 50-foot street runs east and west between plaintiff's property and the two school blocks between which the street passes that is sought to be discontinued.

"I further find that plaintiff lives and his property lies on College street, but does not abut on that portion of the street sought to be discontinued, and that plaintiff's property is located on other streets, and his means of access to and from the property and his ways are not obstructed.

"Thirteenth. I conclude as a matter of law that the petition does not disclose a threat to take, and does not threaten to take, any part of plaintiff's property as the term 'taken' is used in McCammon & Lang Lumber Co. v. Railway Co., 104 Tex. 15 [133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870], and that injunction will not lie except to prevent a taking of the property without compensation. At most, the petition in this case shows only a threat or intention on the part of the defendants to do an act which, if done, will likely damage plaintiff's property. And for such injuries compensation in advance is not required. Id.

"Fourteenth. In the case of Ort v. Bowden, 148 S. W. 1148, quoting from another case, it is said, in regard to streets and to authority granted to city council: 'It must be understood

that [the Legislature] has power over them as streets, for it cannot be justly affirmed that it may deprive them of the character of streets to the special injury of abutters without yielding them fair compensation for the loss actually sustained.' Taking the converse of this proposition, the trial court is of the opinion, that the city council of the city may deprive a street of its character to the special injury of abutters, but will be responsible to those abutters for fair compensation for the loss they actually sustain, and the remedy of the abutters is not by injunction to prevent the injury, but by an action for damages occasioned to the property. The writ of injunction prayed for in plaintiff's petition is therefore denied, and the cost of this proceeding is adjudged against the plaintiff."

[1] It cannot be denied that appellant had a property interest in the street in question, and if it be assumed that the city of Dublin had the power, under the circumstances stated, to close the street as threatened, then it seems under the authorities that the closing would not constitute a taking within the meaning of article 1, section 17, of our Constitution, which requires compensation to be first made. See Settegast v. Railway Company, 38 Tex. Civ. App. 623, 87 S. W. 197; Gray v. Dallas Terminal Co., 13 Tex. Civ. App. 158, 36 S. W. 352; Burton Lumber Corp. v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 822, all cited with approval on this point by our Supreme Court in Lumber Co. v. Railway Company, 104 Tex. 15, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. In such cases, i. e., where the complaining party owns property abutting on the street, but not upon that portion closed, the owner is remitted to an action for his damages, if any, as was held by the court below.

We have concluded, however, that the facts found fail to show authority in the city of Dublin to close the street as attempted, and it is not pretended that the school district had any such authority in its own right. We need not discuss the power of the Legislature in such cases, for no legislative act discontinuing any part of College street is relied upon. The vital question is, Does the ordinance of the city of Dublin confer lawful authority for the threatened act? If not, the remedy of injunction is available to appellant by force of the very terms of the statute. Revised Statutes, art. 4643; Ort v. Bowden, 148 S. W. 1145.

[2, 3] It is not pretended that at the time of the passage of the ordinance in question any express authority from the Legislature to so enact existed. On the contrary, such authority would seem to be excluded on the principle of "Inclusio unius est exclusio alterius." For Revised Statutes, article 854, as it existed at the date of the ordinance expressly conferred the power to vacate an alley upon the written application of the abutting owners, but neither there nor elsewhere is any such express power given to vacate a public street, or part thereof. There existed only such control over the streets as was necessary to prevent encroachments thereon, to alter, widen, or otherwise im-prove the same, and doubtless, in the interest of public safety, to temporarily close them. But these general powers were not, we think, properly susceptible of such extension as to authorize a permanent closing of a public street to the damage of an abutting owner. The city had such power, and such power only, as was conferred upon it, or such power as existed by necessary implication from powers given. See Vosburg, Mayor, v. McCrary, 77 Tex. 568, 14 S. W. 195; Brenham v. Water Co., 67 Tex. 542, 4 S. W. 143. In McQuillin Municipal Corporations, § 229, it is said:

"Whatever rights the city may have over its streets, by virtue of constitution or statutes, its powers are essentially those of a trustee for the benefit of the cestui que trust (the public), liberally construed for its benefit, strictly construed to its detriment," etc.

The same author, in section 1391, says:

"When a public street is laid out the public 'acquires an easement in the land, which includes a right to occupy it for every kind of travel and communication of persons, and every movement of property, that is reasonable and proper in the use of a public street.' As already stated, the right of public travel in a street is the paramount right to which all others must give way. Such travel is the primary purpose of a street. It is not limited in extent, but, on the contrary, the full width and length of a street may be utilized for such purposes, subject, of course, to such regulations as may be imposed by the municipality," etc.

These observations relating to the rights of the public in a street are to be emphasized, if possible, when its closing operates to the special damage of an owner abutting thereon, as in this case was expressly found by the court.

[4] The court below, however, found, in substance, that the continued existence of College street as originally dedicated and used would be, as to the portion closed, dangerous to the students attending the schools of the Independent School District, and that therefore it would be for the benefit and general welfare of the inhabitants of the city to close the street as ordained, and appellees insist that, under the general police powers conferred by the Legislature upon the municipality, the ordinance was authorized. The police power of cities is undoubtedly large, but, like other powers, must be of legislative derivation. Chapter 4 of title 22 of the Revised Statutes enumerates many things that the city may do in the preservation of the life, health, and safety of its citizens. This power would doubtless extend to the temporary closing of a street to insure public safety in cases of fire, excavations, and the like. But the ordinance, a copy of which is attached to the answer of the Dublin Independent School District, recites no such purpose, and we think it would be a perversion of the power to say that it applies to circumstances such as found by the court in this case. Mr. McQuillin in the work hereinbefore cited, section 893, in discussing other limitations of this power, says:

"However, to justify the interposition of this authority in behalf of the public, it must appear: First, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. In a word, the police power must be exercised within its appropriate sphere and by appropriate methods. This power can be exercised only to promote the public good, and is always subject to judicial scrutiny."

In the case as here found the danger is to the school children, and arises only by their own seeking, so to speak, while trespassing upon a street which has been dedicated to other uses for the benefit of the general public. The street as such is not dangerous, and the general public is only affected indirectly by the supposed danger. Nor does it appear that reasonable regulations on the part of the proper authorities cannot be adopted that will prevent the children from seeking places of danger, and at the same time preserve the rights of the public and of abutting owners to the use of the street.

We conclude that the judgment should be reversed, the temporary writ of injunction granted as prayed for, and the cause remanded for further proceedings in accordance with this opinion.