BOWERS et al. v. MACHIR et al.
(No. 8593.)

(Court of Civil Appeals of Texas. Ft. Worth.
Dec. 2, 1916. Rehearing Denied
Jan. 6, 1917.)

1. MUNICIPAL CORPORATIONS ⬥⬥697(3)—OB-
STRUCTION OF ALLEY—INJUNCTION—PARTIES.

In an action to enjoin the obstruction of an
alley by closing it at each end, the city, which
had nothing to do with the closing, and which
passed an ordinance on application of the own-
ers merely to abandon any claim to the alley
as a public alley of the city and to allow the
owners of the adjacent lots to close it, was not
a necessary party, even if a proper party.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1504; Dec. Dig. ⬥⬥
697(3).]

2. DEDICATION ⬥⬥53 — PLAT — STREETS —
RIGHTS OF PURCHASERS.

Where an owner of land plats it into lots,
public streets and alleys, and sells lots by ref-
erence to the plat, the purchaser of a lot ac-
quires, as appurtenant thereto, the right to
use the streets so dedicated, which right is a
property right entitled to the same protection
as the title to the land, and which is not limit-
ed to the streets on which the lots of such pur-
chaser are situated.

[Ed. Note.—For other cases, see Dedication,
Cent. Dig. § 96; Dec. Dig. ⬥⬥53.]

3. MUNICIPAL CORPORATIONS ⬥⬥657(2)—CLOS-
ING ALLEY—CHARTER AND STATUTORY POW-
ERS.

Under Sp. Acts 31st Leg. c. 31, subc. 4, §
1, giving the city of Ft. Worth exclusive pow-
er over its streets and alleys, with express power
to vacate or close them, and Vernon's Sayles'
Ann. Civ. St. 1914, art. 854, vesting in the city
exclusive control over streets, alleys, etc., with
power to vacate an alley in a block upon writ-
ten application of the owners of the lot, to
thereupon revert and become the property of
the owners, the city had the right to vacate a
dedicated public alley, but not to close it.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 722, 1429; Dec. Dig.
⬥⬥657(2).]

4. MUNICIPAL CORPORATIONS ⬥⬥663(1) — VA-
CATING ALLEY—COMPENSATION.

In such case, the city could not destroy the
special property rights of lot holders in having
the alley left open, without making itself lia-
ble for compensation therefor.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1438; Dec. Dig. ⬥⬥
663(1).]

5. MUNICIPAL CORPORATIONS ⬥⬥657(1)—AL-
LEY—VACATION—PUBLIC NUISANCE.

Under Vernon's Sayles' Ann. Civ. St. 1914,
arts. 844, 845, authorizing city of Ft. Worth to
pass ordinances declaring what shall constitute
a nuisance, and empowering it to abate the
same, the city's closing of an alley could not be
justified on the theory that it was a nuisance,
where the petition of property owners in the
block to have the alley closed did not allege that
the alley was a public nuisance, and where
the evidence offered did not show that it was a
nuisance per se, or that the city's commissioners
found it such when they passed the ordinance
permitting its closing.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 722, 844, 1429; Dec.
Dig. ⬥⬥657(1).]

6. MUNICIPAL CORPORATIONS ⬥⬥657(5)—CLOS-
ING ALLEY—ORDINANCE—RECORD.

If an ordinance, giving the owners of the ad-
jacent lots permission to close an alley, was bas-
ed on the fact that the alley was a nuisance, as
well as by reason of the fact that the owners of
the property in the block had filed an applica-
tion therefor, that should appear in the record.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 722, 1429; Dec.
Dig. ⬥⬥657(5).]

7. MUNICIPAL CORPORATIONS ⬥⬥269(1) —
STREETS AND ALLEYS—NUISANCE—IMPROVE-
MENTS.

Where a city was expressly authorized by
statute and by its charter to improve an alley
by filling it so as to prevent water from stand-
ing therein, it was its duty to do so if the pub-
lic health demanded it.

[Ed. Note.—For other cases, see Muncipal
Corporations, Cent. Dig. §§ 718, 720, 722; Dec.
Dig. ⬥⬥269(1).]

8. MUNICIPAL CORPORATIONS ⬥⬥663(1) — IN-
TEREST IN ALLEY—COMPENSATION.

A city's neglect of its statutory and char-
ter duties to fill in an alley to prevent water
from standing therein if the public health de-
manded it would not furnish a lawful excuse for
depriving. a lot owner of his special interest
in the abutting alley acquired by purchase, with-
out compensating him therefor.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1438; Dec. Dig. ⬥⬥
663(1).]

9. MUNICIPAL CORPORATIONS ⬥⬥663(1)—CLOS-
ING ALLEY—INJUNCTION.

Without a showing of the necessity for clos-
ing an alley on the ground that it was a menace
to public health or safety, the city would have
no right to close, or permit it to be closed, and
an injunction would lie in favor of an owner
having a special property interest in keeping
the abutting alley open.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1438; Dec. Dig. ⬥⬥
663(1).]

10. MUNICIPAL CORPORATIONS ⬥⬥663(1) —
CLOSING ALLEY—SPECIAL INTERESTS—STAT-
UTE.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 854, the city of Ft. Worth, as trustee for
the public, might, if it saw fit, close an alley for
the special benefit of owners of property in the
block, and no one would have a cause of action
therefor, unless he showed some special inter-
est in the alley additional to that enjoyed by
the public; but one having a property interest
in keeping the abutting alley open, acquired by
purchasing with reference to the plat so as to
furnish more convenient access to the rear of his
lot, had such special interest.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1438; Dec. Dig. ⬥⬥
663(1).]

11. EMINENT DOMAIN ⬥⬥69 — PURPOSE OF
TAKING—COMPENSATION.

The constitutional denial of any legislative
power to authorize the taking of one's property
for public benefit without compensating him
therefor applies with special force when the
taking is for the sole purpose of donating it to
a few individuals.

[Ed. Note.—For other cases, see Eminent Do-
main, Cent. Dig. §§ 171–179; Dec. Dig. ⬥⬥
69.]

12. APPEAL AND ERROR ⬥⬥500(1)—RECORD—
MATTERS TO BE SHOWN—ORDER ON MOTION.

Where the record in a suit to enjoin obstruc-
tion of alley by adjacent owners contained no
order upon a motion to abate pending the deter-
mination of a similar suit, the assignments of
error for failure to sustain the motion would be
overruled.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 2295; Dec. Dig. ⬥⬥500(1).]

---

⬥⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit for injunction by A. L. Bowers and others against C. C. Machir and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and J. M. Chambers, of Dallas, for appellants. Mercer, Wall & Rouer and Holder & Eaton, all of Ft. Worth, for appellees.

DUNKLIN, J. On May 25, 1904, J. A. Lee, who was the owner of block 8, of the Field Welsh addition to the city of Ft. Worth, subdivided and platted said block into lots, streets, and alleys, a plat of which subdivision was duly recorded in the Deed Records of Tarrant County. Following is a copy of said plat:

The following is the written declaration of Lee with reference to the plat, which was filed for record as a part of the plat:

"Know all men by these presents that I, J. A. Lee, the owner of block No. 8 of the Field-Welsh addition to the city of Fort Worth, Tarrant county, Texas, do hereby adopt the foregoing plan for subdividing same, to be known as 'Lee's subdivision of block No. 8 of the Field-Welsh addition' to the city of Fort Worth, Texas, and do hereby dedicate to the use of the public the streets and alleys as shown thereon, except that part of the alley marked 'Reserved' lying west of lots 1 to 8. I also reserve to myself the right to use the dirt from Lake street that is cut thereon when said street is graded. I reserve to myself the right to cross the streets and alleys or to run on said streets or alleys shown on said plat with water pipes from the well now located on lot 1."

Thereafter, on January 11, 1906, Lee sold to J. C. McKain lots 25 and 26 shown in the plat, said lots being described by reference to the recorded plat. On June 10, 1907, McKain and wife sold the lots to Hattie L. Manning, who, on April 7, 1909, sold the same to A. L. Bowers. In each of the two deeds last mentioned the property was described in the same manner and with reference to the same plat, and both of those deeds were duly recorded in the record of deeds of Tarrant county. On December 5, 1911, Miss Erna E. List purchased from the heirs of J. A. Lee, deceased, lot 34 shown in said plat, and in 1914, Mrs. Pearl Machir purchased lot 35 from the same heirs. During the summer of 1915, the board of commissioners of the city of Ft. Worth passed the following ordinance:

"Be it ordained by the board of commissioners of the city of Fort Worth:

"Section 1. That a 20-foot alley fronting on South Lake street in block 1000, and lying between lot 34 and lot 35 in block 8 of J. A. Lee's subdivision of Field-Welsh addition to the city of Fort Worth, be and the same is hereby ordered closed and the right to the use of said alley is hereby granted and vested one half to the owner of lot 34 and one half to the owner of lot 35, so that the owners of said property will each control and own up to a line drawn through the center of said alley.

"That this ordinance shall take effect and be in force from and after its passage."

On July 1, 1915, soon after the passage of said ordinance, C. C. Machir, husband of Mrs. Pearl Machir, and Miss Erna E. List caused a fence to be erected across the east end of the 20-foot alley described in the city ordinance, and also put in a sidewalk and curbing across the west end of the alley, and on the east line of Lake street, and at that time Miss List was the owner of lot 34 and Mrs. Pearl Machir the owner of lot 35. Later, Miss List sold lot 34 to her mother, Mrs. Alice M. List. On June 13, 1916, A. L. Bowers, as the owner of lots 25 and 26, joined by his tenant, C. M. Harris, instituted this suit in the district court against C. C. Machir, Miss Erna List, and Mrs. Alice M. List, to require the removal of the obstructions so placed across the two ends of the 20-foot alley mentioned above and to restrain any further obstruction of the same. In connection with such permanent relief, plaintiff also prayed for a temporary writ of injunction for such relief pending the suit. On June 13, 1916, the application for the temporary writ was heard and denied by the district judge,

such action on his part being predicated upon the following findings of fact, and conclusions of law:

"(1) The passway in question was dedicated to the public on May 25, 1904, by J. A. Lee by making and recording the plat as alleged by the plaintiffs, and the same had been continuously used by the public as a passway until it was closed by defendants Machir and Erna List, about July 1, 1915.

"(2) Plaintiffs and defendants all hold, under the said J. A. Lee as common source of title, as alleged by plaintiffs, and defendants each had notice and knowledge of the public character of the passway at the time they respectively acquired their titles to the adjacent lots.

"(3) Defendant Erna List had sold lot 34 to her mother, Alice M. List, prior to the filing of this suit, but after same had been closed, and had delivered possession thereof to her.

"(4) Upon a petition of defendants and others, of which plaintiffs had no notice, the city commission of the city of Ft. Worth, a few days prior to said closing, enacted an ordinance closing said passway, and afterwards upon petition of plaintiffs and others refused ,to repeal said ordinance.

"As a matter of law, I conclude:

"1. The city of Ft. Worth is a necessary party to this action.

"2. No right of action is shown against defendant Erna List because of her having disposed of the property adjacent to the passway in question, and has no further interest therein.

"(3) The city of Ft. Worth, by the terms of its charter, had power to close said passway, and the ordinance so declaring is valid and binding upon plaintiffs, and they are therefore not entitled to the injunction prayed for."

From the order so made plaintiffs have prosecuted this appeal.

[1] As noted already, the alley was closed by Machir and Erna List. The city had nothing to do with the closing. The evidence shows that the ordinance was passed upon the application of the owners of property fronting on Lake street between Dashwood and Rosedale streets, and it is shown conclusively that the action of the commissioners in passing it was merely to abandon any claim on the part of the city to the alley as a public alley of the city, and to allow the owners of lots 34 and 35 to close it. The mere passage of the ordinance did not give any cause of action against the city such as is asserted by the plaintiffs in the present suit. The closing of the alley, if wrongful, and that alone, gave rise to a cause of action in plaintiffs' favor, if they have a cause of action for such wrongful closing. Hence the conclusion of the trial judge that the city of Ft. Worth was a necessary party to the suit was erroneous, even though it could be said that the city was a proper party. Burton Lumber Co. v. Houston, 101 S. W. 822; State v. Franklin, 133 Mo. App. 486, 113 S. W. 652.

[2] By other assignments appellants insist that the trial judge erred in holding, in effect, that the city ordinance was binding upon the plaintiffs, and gave to the defendants the legal right to close the alley. It is well settled by the decisions of this state, and of many other states as well, that if the owner of land lays out and plats the same into lots and public streets and alleys, and sells such lots by reference to the plat, the purchasers of such lots acquire as appurtenant thereto the right to use the streets so dedicated, which right is a property right acquired by purchase, and entitled to the same protection as the title to the lots themselves, and this right is not limited to the streets on which the lots of such purchasers are situated. Oswald v. Grenet, 22 Tex. 94; Lamar County v. Clements, 49 Tex. 347; Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924; Corsicana v. Anderson, 33 Tex. Civ. App. 596, 78 S. W. 261; Stevens v. City of Dublin, 169 S. W. 188; Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288; Elliott on Roads and Streets (3d Ed.) §§ 129, 130, 131, 132.

[3, 4] Appellees insist that, while the dedicator of such a plat is estopped to deny the purchaser the right to have the streets and alleys so dedicated kept open, the city, as trustee for the public at large, has the right to close such streets whenever the interest of the public demands it. In other words, they insist, in effect, that the action of the city in ordering the alley closed was a reasonable regulation within the power of the city commissioners. By section 1, c. 4, p. 246, Special Laws of the Legislature of 1909, the city of Ft. Worth is given exclusive power and control over the streets and alleys of the city, with express power to vacate or close the same. And by article 854, Vernon's Sayles' Texas Civil Statutes, any incorporated city or town in the state is also vested with the exclusive control over streets, alleys, and public grounds of the city, with power to alter or vacate an alley in a block within the city upon the written application of the owner of the block, or if there be more than one owner, then upon the written application of all of the owners thereof, uniting in such application. While this statute authorizes the vacation of an alley, it does not authorize the closing of the same. Stevens v. City of Dublin, 169 S. W. 188. It is further provided in that statute that when such an alley is thus vacated, it shall "thereupon revert to and become the property of the owner of the block of which it was a part, or if more than one, then to the owners of the adjoining lots therein, each extending to the center of the alley so vacated." The provision so quoted from the statute does not appear as a part of the city charter, and it would seem that the city in passing the ordinance quoted above did so under and by virtue of this, article of the statute. The defendants in the suit claim no other right to close the alley except by virtue of the permission of the city so to do as expressed in the ordinance quoted. In other words, they are committed to the proposition that if the city did not have the right as against the plaintiffs to authorize them to close the street, then they had no such right. As noted already, the facts all show that by the or-

dinance the city commissioners had no other purpose than the election to vacate the alley as a public alley of the city, and to disclaim any responsibility on the part of the city by reason of its being kept open as a passway available to the public. It had no purpose to close the alley, but merely to give permission to the defendants to close the same, and to vest in them title thereto so far as it was in the power of the city so to do. There is no doubt that the city had the right to vacate the alley as a public alley, but that if it did so, it had no power to prevent the use of the way as a street by those who had a legal right to have it left open for such use. Gilder v. City of Brenham, 67 Tex. 351, 3 S. W. 309. And if the plaintiffs had a special property right in having the alley left open, the city could not, in any event, destroy the same without making itself liable for compensation therefor. Lumber Co. v. Railway, 104 Tex. 15, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. In the case just cited it was held that the appropriation of a public street by a railway company, acting under authority of the city so to do, is a taking of property of an abutting lot owner who also owns the fee-simple title to the street as distinguished from a mere damaging thereof, and may be restrained by injunction, unless compensation is paid, or secured, in advance of such taking, as required by article 1, § 17, of the Constitution. It was further held in that case that if the owner of the abutting lot does not own the fee-simple title to the street, an injunction will not lie to require payment in advance of compensation for the damage done to the lot, because closing the street would not be a taking of property within the meaning of the Constitution, but for such interference with access to the lot the owner would be entitled to recover damages. To the same effect is Stevens v. City of Dublin, 169 S. W. 188, and other authorities therein noted. In the case last cited this court held that an injunction would lie to restrain the closing of a street to the injury of abutting property, in the absence of a showing that such closing was necessary for the preservation of the safety of the citizens generally, even though it would be conducive to the safety of children attending a nearby public school. And it further appeared in that case that the only special interest which the owner of the property had in keeping the street open was by virtue of the fact that his property abutted thereon. In that decision our statutes, vesting in cities various police powers for the preservation of the life, health, and safety of the citizens, were referred to, but it was held that the act of the city in closing the street did not come within the purview of any of those statutes.

[5] Upon the trial of the present suit, the defendants sought to show that the reason why the ordinance giving them permission to close the street was passed was because of the fact that it was a public nuisance, but the ordinance does not, of itself, show that such was its purpose. It seems that the petition of the property owners in the block to have the alley closed was in writing, but the same does not appear in the statement of facts, nor does it otherwise appear that it contained allegations that the alley was a public nuisance. The testimony introduced by the defendant to show that the alley was a nuisance consisted of statements of different witnesses, to the effect that the water from rains would accumulate in the alley and would not drain off; that the same was used as a passway for negroes, express, delivery, and garbage wagons, to the annoyance of defendants who owned lots 34 and 35, and perhaps some other persons residing in that vicinity; that the back gates of the owner of lot 24 would sometimes be left open, thereby exposing his back premises to the view of people who lived opposite thereto, and that the alley was a kind of an eyesore generally to the people who lived in that portion of the town, because it had grass growing in it and did not look well. It further appears, however, from the same witnesses that the accumulation and standing of water in the alley was due principally to the fact that the owners of lots 34 and 35 had filled in their lots to a higher level than the alley.

By articles 844 and 845, Vernon's Sayles' Texas Civil Statutes, the city was given authority to pass ordinances declaring what shall constitute a nuisance, and power to abate the same. But there was no proof of any ordinance declaring that such a condition and use of the alley as that in controversy would render it a nuisance. Nor did the evidence offered by defendants show that the alley was a nuisance per se; nor that the city commissioners found it to be such when they passed the ordinance, and passed it to abate the nuisance. It is therefore quite clear that the closing of the alley cannot be justified upon the theory that it was a nuisance. G., C. & S. F. Ry. Co. v. Belton, 122 S. W. 413. After accepting the alley as a public alley, the city had no authority to close it, except as the power so to do was conferred by statute or by its special charter. 1 Elliott on Roads and Streets, § 30; 2 Id. § 1177; 13 R. C. L. § 60.

[6] And if the ordinance giving defendants permission to close it was based upon the fact that it was a nuisance, as well as by reason of the fact that the owners of property in the block had filed an application therefor, that showing should appear in the record. McIntire v. Lucker, 77 Tex. 259, 13 S. W. 1027; Vogt v. Bexar County, 5 Tex. Civ. App. 272, 23 S. W. 1044; Moseley v. Bradford, 190 S. W. 824, cause No. 8458, by this court, not yet officially reported.

[7, 8] Furthermore, by express provision of the statute and the charter, the city had the authority to improve the alley by so filling it as to prevent water from standing thereon,

and it was the duty of the city so to do if the health of the public demanded it, and a neglect of that duty would not furnish a lawful excuse for depriving plaintiff Bowers of the special interest in the street acquired by his purchase of lots 25 and 26, without compensating him therefor. As was said in Dwyer v. Hosea, 1 Posey Unrep. Cas. 596:

"The charter of the city conferred upon them the power, and it became their duty, to preserve the health and peace of the city, but it did not confer upon them the power, by suffering, in violation of this duty, the alleys to become a nuisance, to declare them so, and then sell them. This would be a cheap mode of acquiring property."

In that case the special interest of the party complaining of the action of the city consisted in the fact that his property abutted on the alley.

[9] No doubt is entertained by us that if the alley was a menace to public health or safety of the citizens, the city would have a right to close it, or give permission to have it closed, notwithstanding any special property right of plaintiffs to have the same kept open, thus leaving to plaintiffs as their only remedy for relief a suit for damages for the injuries so sustained. But in the absence of a showing for such necessity, the city would have no right so to do, and an injunction would lie in favor of a property owner having a special property interest in keeping the street open to restrain it from so doing. In Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288, in which a writ of error was denied, it was held that plaintiff, Henrietta Kalteyer, was entitled to an injunction to restrain Sullivan and the city of San Antonio from closing a public alley on which her property abutted. The city had given Sullivan permission to close it, and it was closed by him by virtue of the authority so given. The only special interest which the plaintiff in that suit had in the alley different from that of the public was by reason of the fact that her property abutted thereon. The alley had been dedicated as a public thoroughfare in 1852, and the dedication had been accepted by the city. It does not appear that the plaintiff in that case had bought her property from the dedicator, or any one in privity to him, with a view to any plat, as plaintiffs did in the present suit. In that case the court said:

"An abutting owner has rights not shared by the public at large, special and peculiar to himself, which arise out of the very relation of his lot to the street in front or alley in the rear of it. These rights are property, and as such are as sacred from legislative invasion as his right to the lot itself. Dill. Mun. Corp. § 656a; Story v. Railroad Co., 90 N. Y. 122 [43 Am. Rep. 146]; Railroad Co. v. Heisel, 38 Mich. 62 [31 Am. Rep. 306]; Adams v. Railroad Co., 39 Minn. 286, 39 N. W. 629 [1 L. R. A. 493, 12 Am. St. Rep. 644]. The abutting owner's right of access to and from the street, subject to legitimate public regulations, is as much his property as his right to the soil within boundary lines. And when he is deprived of such right of access, or any other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulation, he is deprived of his property. 2 Dill. Mun. Corp. § 487b. When it is asserted that the Legislature has plenary power over municipal streets, it must be understood that it has power over them as streets, for it cannot be justly affirmed that it may deprive them of the character of streets, to the special injury of abutters, without yielding them fair compensation for the loss actually sustained. Elliott, Roads and Streets, 19. The city council of San Antonio can have no more power over the streets of the city than is granted by the Legislature, nor can the Legislature grant such power as would, in its exercise by the council, damage the property of an abutting owner, without providing adequate compensation for such damages. The power vested in the Legislature over public highways, which it may delegate to towns and cities over streets within their limits, is for the benefit of the public, and should, by municipalities, be always exercised in furtherance of the purpose for which it is conferred. When the representatives of the corporation upon whom this power is conferred close a highway against the use and to the detriment of the public, and turn it over to a private individual for his private use, they pervert the law, and violate the trust which it is their duty to faithfully execute. * * * 'The usual power to regulate and control streets has ever been held not to authorize the municipal authorities to allow them to be encroached upon by the adjoining owner by erections made for his exclusive use and advantage.' 2 Dill. Mun. Corp. § 660. And it is well settled that equity will grant relief to a party entitled to a right of way over a street, and protect him in the enjoyment thereof, by restraining the erection of obstructions thereon. Id. § 661. The owner of land abutting upon a street or alley, one end of which is obstructed so that he cannot have egress from his property to other streets in that direction, suffers an injury peculiar to himself by reason of the public nuisance (Bannon v. Murphy [Ky.] 38 S. W. 890), and is entitled to such relief."

[10] In addition to the right of plaintiff Bowers to have the alley kept open acquired by the purchase of his lots with the view to the plat which had been dedicated by J. A. Lee, the evidence showed without controversy that it was of special advantage to Bowers in that it furnished him a more convenient access to the rear of his lots; the proof showing that the 10-foot alley running north and south in the rear of his lots was not of sufficient width to allow the ingress and egress by certain vehicles owned by him without moving his rear fence and other improvements from the location where they were originally placed by the owners of the lot, relying upon the assumption that the alley in controversy would always be kept open as it had been platted and dedicated. The evidence further shows that through the alley was much nearer Lake street, which was a paved street, than plaintiff otherwise would be required to travel in order to reach that street. Under article 854 of the statute, the city, as the trustee for the public at large, would have the power, if it saw fit so to do, to close the alley for the special benefit of the owners of property in that block, and no one would have a cause of action therefor, unless he showed some special interest in the alley additional to that which was enjoyed by the public generally. One who had a property interest in keeping the street open ac-

quired by a purchase with reference to a plat, as plaintiff Bowers in the present suit acquired his lot, would have such special interest.

[11] The constitutional denial of any power in the Legislature to authorize the taking of one's property, even for a public benefit, without compensating him therefor applies with special force when the taking is for the sole purpose of donating it to a few individuals. In no event could the city deprive the owner of such a special interest of the value thereof without rendering itself liable in damages therefor, for so to do would be to deprive such owner of his property without due process of law, and, as stated above, in the absence of some special necessity, such as for the preservation of life or health of citizens, such owner would not be limited to a suit for damages sustained by such closing, but would be entitled to equitable relief by injunction to restrain such acts on the part of the city. Vernon's Sayles' Texas Civil Statutes, art. 4643; Kalteyer v. Sullivan, supra; Stevens v. City of Dublin, supra.

[12] Defendants filed a motion in the trial court to abate the suit predicated upon allegations that J. M. Chambers, who owned property situated, with reference to the alley in controversy, similarly to plaintiffs' property, had instituted suit for the same relief against the same defendants in the Sixty-seventh district court, another and different court; that the issues in the two suits were substantially the same, and should be determined in one and the same court at the same time, in order to avoid a multiplicity of suits and unnecessary vexation to defendants. Defendants now present a cross-assignment of error for failure of the trial judge to sustain that motion. The record contains no order of the judge upon said motion, and no showing that any ruling by him thereon was ever invoked. Hence the assignment must be overruled, without reference to the merits of the motion, if any there be.

Without discussing other questions presented in appellants' brief, which are incidental to the issues discussed above, we are of opinion that the court erred in the conclusion reached that plaintiffs were not entitled to the relief prayed for; and hence the judgment is reversed, and the cause remanded for further proceedings in accordance with the conclusions above noted.

Reversed and remanded.