Joe OLIVARES, Sr., et al., Appellants,

v.

CITY OF SAN ANTONIO, Appellee.

No. 7414.

Court of Civil Appeals of Texas, Beaumont.

Dec. 28, 1972.

As Amended on Denial of Rehearing Feb. 8, 1973.

Tuck R. Chapin, John M. O'Connell, San Antonio, for appellants.

Howard C. Walker, Crawford B. Reeder, San Antonio, for appellee.

DIES, Chief Justice.

For some time prior to April 10, 1969, the First National Bank of San Antonio had begun plans for the construction of a parking garage. These plans were frustrated because the structure would have to be built over Breneman Street (sometimes referred to as an alley), for many years a dedicated public way in San Antonio. After many meetings by various City departments, the City Planning Commission, and the City Council, the latter on April 10, 1969, closed by ordinance a portion of Breneman Street, quitclaimed it to the Bank and received from Bank $16,860. All abutting owners to the closed portion of Breneman Street were apparently satisfied except Joe Olivares, the lessee of the Travis Plaza Hotel, which fronted on St. Mary's Street.

Prior to the closing, Breneman Street extended from St. Mary's Street, alongside the Travis Plaza Hotel, one block east.

Then it intersected south and north, on the south coming into East Travis Street, a one-way street west, and on the north into East Pecan Street, a one-way street east. The ordinance above mentioned closed that portion of Breneman Street east (to the rear) of the Travis Plaza Hotel, as well as the section connecting East Pecan and East Travis Streets. That portion alongside the hotel was not closed and an alley was extended and paved from the rear of the hotel northward to East Pecan Street.

Mr. Olivares appeared in opposition to the closing several times before several agencies and meetings, but in vain. The garage was built. Mr. Olivares then filed a suit for money damages against the Bank and the City. He settled his case against the Bank for $35,000, but after conclusion of his suit against the City, the trial court directed a verdict for the City from which Olivares perfects this appeal. The parties will be referred to herein as City, Landowner, and Bank.

Landowner's assignments of error track City's motion for a directed verdict. We will address ourselves to those urged by City in its brief.

■ In this review, we must view the evidence in the light most favorable to Landowner and must indulge against the court's action every inference that may properly be drawn from the evidence. Dunagan v. Bushey, 152 Tex. 630, 263 S. W.2d 148, 153 (1953); Kingsley v. Western Natural Gas Co., 393 S.W.2d 345, 351 (Tex.Civ.App., Houston, 1965, error ref. n. r. e.), and 4 Tex.Jur.2d Appeal and Error —Civil Cases § 803 (1959).

■ We first come to grip with the question of whether Landowner has stated a cause of action against City. There is no question but that City had the right to "vacate and abandon and close" the street in question when in the best interest of the public. Art. 1175 § 18, Vernon's Ann.Civ. St. Art. 4646a, V.A.C.S. allows abutting owners to enjoin such action if they have

not released any claim for damages they might have or if they have not been paid compensation through a condemnation proceeding. Dykes v. City of Houston, 406 S.W.2d 176, 181 (Tex.1966). But, when no injunction is sought, as in this case, does Landowner have a cause of action for money damages against City? This is apparently a case of first impression on this question.

Dallas Cotton Mills v. Industrial Co., 296 S.W. 503 (Tex.Comm.App., 1927), held that a city may by ordinance close a street, but neither the city nor anyone else may physically close it. See also Blair v. Astin, 10 S.W.2d 1054 (Tex.Civ.App., Galveston, 1928, error ref.); Elston v. City of Panhandle, 46 S.W.2d 420 [Tex.Civ.App., Amarillo, 1932, error ref. 121 Tex. 553, 50 S.W.2d 1090 (1932)]. Dykes v. City of Houston, supra, upheld the city's right not to open a dedicated street but denied its right to barricade it after it had been opened by an irate abutting landowner.

■ In this case, City admits that if it had physically closed Breneman Street, it would be responsible in damages to Landowner. However, City says the actual, physical closing was done by Bank, which relieves City. We cannot accept this tenuous argument. City, by passing the ordinance and quitclaiming the street to Bank for $16,860, must share any responsibility in monetary damages to Landowner; and Landowner's settlement with Bank did not release City.

We next consider the question of whether there is any evidence that the closing of that portion of Breneman Street deprived Landowner of material and substantial access to its property. City argues that there is a difference between deprivation of access and impairment of access, citing Collins v. City of San Antonio, 443 S.W.2d 563 (Tex.Civ.App., San Antonio, 1969, error ref. n. r. e.), and City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969). We do not believe these cases foreclose Landowner's cause of action here.

The *Collins* case said, "[W]e reject plaintiff's contentions that he is entitled to compensation because the change in Guadalupe Street has resulted in 'circuity of travel' and diversion of traffic. As long as the abutting owner retains reasonable access to the public highway, he does not suffer compensable damage because the change in design or structure of the highway requires him and those dealing with him to use a more circuitous route in going to and from his premises." (443 S.W.2d at 566)

The *Fox* case requires material and substantial impairment of a landowner's right of access before recovery for the loss of value of real estate.

The evidence in our case shows that prior to the closing of a portion of Breneman Street, traffic from East Travis Street had access to the hotel via Breneman Street. The closing of Breneman Street terminated this access. Testimony was presented that prior to the closing an average of ten cars per day used this access. The availability of this route was a principal reason for Landowner's executing the lease, for in the hotel business, access "is the first order." A motor entrance was planned by Landowner and some $15,000 was expended before the closing of Breneman Street. After the closing, this motor entrance was not feasible. Prior to the Olivares' lease, the hotel had sustained substantial losses. After Olivares took it over, within four years it began to make a profit, in one year $35,000. An average profit of $50,000 per year could be expected if Breneman Street had not been closed it was said. Testimony was given, and heard without objection, that prior to the closing, the lease in question had a market value of $390,200 which was destroyed by the closing.

■ Viewing this evidence and its inferences in the light most favorable to Landowner, as we must, we believe it shows material and substantial impairment of right to access.

City argues that the ordinance in question provided a new alley which affords Landowner access substantially equal to or better than the access afforded by Breneman Street. As noted before, this new alley, while affording access to Landowner to East Pecan Street, does not afford access to East Travis Street which, from the evidence above noted, Landowner contends is the cause of its damage. City also says that Landowner's access to and from St. Mary's Street, upon which its property abuts, has been wholly unaffected by the closing of Breneman Street. There is testimony that in front of the hotel on St. Mary's Street parked cars and other vehicles make it difficult to stop and unload at this entrance. This testimony was given as an additional reason for the importance of access from Breneman Street.

Since we believe this case must be sent back for retrial, it is unnecessary to deal with appellants' other assignments of error. The judgment of the trial court in directing a verdict for City is reversed and this cause remanded.

STEPHENSON, Justice (concurring).

This brief concurring opinion on rehearing. Simply stated, the dissent agrees that the City could not close Breneman Street in the sense of preventing ingress and egress by obstructions but says the City did no more than relinquish the public easement in this case. I cannot subscribe to this construction of what transpired.

In my opinion, Breneman Street was closed by the joint action of the Bank and the City and both are equally legally responsible. There can be no doubt that the closing of this street in both senses, abandonment and obstruction, was accomplished by carefully planned action on the part of both. Actually, this is not denied by the City in its brief. At one sitting, the City Council closed the street, authorized the execution of the deed to the Bank, and re-platted the property so as to remove

Breneman Street. Two weeks before these actions were taken, the minutes of the City Council show that this matter was discussed at length and a representative of the Bank was present with its plans to build the garage which would obstruct the street. It is stated in the dissent that the acceptance of money from the Bank by the City is immaterial. I disagree. In my opinion it is further evidence of the concerted effort on the part of both to accomplish the "obstruction" of the street. Even though the general rule may be that the "motive" of the municipal authorities may not be questioned, their purpose is a legitimate matter for inquiry. See 11 McQuillin, Municipal Corporations, § 30.186 (1964 Rev.Vol.) as follows:

"But while the courts cannot inquire into the motives of municipal authorities in vacating a street, they may consider the purpose intended or accomplished thereby, which, if ultra vires or otherwise illegal, may be ground for judicial interference. For example, if the primary or sole purpose of a vacation is benefit to the abutter or some of them the public interest ordinarily is not served and the vacation is unwarranted."

Also, § 30.186a as follows:

"A street or alley cannot be vacated for a private use, i. e., for the purpose of devoting it to the exclusive use and benefit of a private person or corporation; but it may only be vacated to promote the public welfare."

The dissent appears to rely primarily upon two cases, which reliance, in my opinion, is misplaced. Blair v. Astin, 10 S. W.2d 1054 (Tex.Civ.App., Galveston, 1928, error ref.), makes it clear that it is answering only two questions. First, that the appellant did not have the right to close the street and, secondly, that the City of Houston had the right, through its deed, to merely relinquish its public easement for street purposes in the street in question.

This statement appears in that opinion at page 1056:

"Having passed no ordinance or resolution nor done any other overt act looking toward physical closing of the street at that point . . . except . . . to release any interest it might have therein."

The question as to whether a city must respond in damages was not in issue in that case.

Bowers v. Machir, 191 S.W. 758 (Tex. Civ.App., Fort Worth, 1916, no writ), is also cited in the dissent. This is a case in which an injunction was sought to require the defendants to remove a fence built across an alley and the city was not a party to the suit. The trial court denied the injunction and found that the city was a necessary party. The court of civil appeals reversed and remanded the case, holding that the city was not a necessary party, although it was a proper party. These statements of law are also made therein:

"There is no doubt that the city had the right to vacate the alley as a public alley, but that if it did so, it had no power to prevent the use of the way as a street by those who had a legal right to have it left open for such use. Gilder v. City of Brenham, 67 Tex. 345, 351, 3 S.W. 309. And if the plaintiffs had a special property right in having the alley left open, the city could not, in any event, destroy the same without making itself liable for compensation therefor. [M. & L.] Lumber Co. v. T. & B. Railway, 104 Tex. [8] 15, 133 S.W. 247, 36 L.R.A. (N.S.) .662, Ann.Cas.1913E, 870.

\*    \*    \*    \*    \*    \*

"The constitutional denial of any power in the Legislature to authorize the taking of one's property, even for a public benefit, without compensating him therefor applies with special force when the taking is for the sole purpose of donating it to a few individuals. In no event could the city deprive the owner of

such a special interest of the value thereof without rendering itself liable in damages therefor, for so to do would be to deprive such owner of his property without due process of law, and, as stated above, in the absence of some special necessity, such as for the preservation of life or health of citizens, such owner would not be limited to a suit for damages sustained by such closing, but would be entitled to equitable relief by injunction to restrain such acts on the part of the city. Vernon's Sayles' Texas Civil Statutes, art. 4643; Kalteyer v. Sullivan, [18 Tex.Civ.App. 488, 46 S.W. 288 (San Antonio, 1898, refused)]; Stevens v. City of Dublin, [169 S.W. 188 (Tex.Civ. App., Fort Worth, 1914, no writ)]." (191 S.W. at 761, 763)

Article 4646a, V.A.C.S., is discussed in the dissent and the conclusion is reached that plaintiffs were not abutting landowners. I agree with the statement made in 11 McQuillin, Municipal Corporations, § 30.-194, supra, to the effect that where a portion of a street is vacated in another block, even though the landowner's access is not as short or convenient, he does not suffer special injury as would entitle him to damages. However, if the means of ingress or egress is cut off or lessened in the same block with the abutting landowner, he may recover his damages. The plaintiffs in the case before us had property abutting on Breneman Street in the same block in which a portion of Breneman Street was obstructed and, therefore, in a legal sense were abutting landowners.

The dissent suggests the majority opinion may be contrary to a series of Supreme Court cases in dealing with circuity of travel as evidence of denial of access. The cases referred to are City of Beaumont v. Marks, 443 S.W.2d 253 (Tex. 1969); DuPuy v. City of Waco, 396 S.W. 2d 103 (Tex.1965); Archenhold Automobile Supply Co. v. City of Waco, 396 S.W. 2d 111 (Tex.1965), and City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969). A later case, also cited in the dissent as to another

matter, City of Waco v. Texland Corporation, 446 S.W.2d 1, 2 (Tex.1969), contains this statement:

"Our continuing study of this admittedly difficult problem has led to the conclusion that the first of the corollary rules just stated should be modified to hold that property has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access; as before, this is a question of law for the Court."

My conclusion is that the City cannot, through its joint action with the Bank, accomplish the closing and obstructing of Breneman Street through indirection which, admittedly, it could not do directly and must respond in damages.

KEITH, Justice (dissenting on rehearing).

A careful consideration of the able motion for rehearing filed by City leads me to believe that we erred in reversing the judgment of the trial court. Since my brethren adhere to our original determination, I must respectfully dissent.

*First*: I consider immaterial the City's acceptance of money from the Bank for the quitclaim deed to a portion of the alley.[1] No one contends that the City had any fee title to the land. Ordinarily, in Texas an abutter on a street owns the fee

to the center thereof, subject to the city's easement in behalf of the public. "Upon the discontinuance of the highway [the public use of the street in our case] the soil and freehold revert to the owner of the land." Mitchell v. Bass, 26 Tex. 372, 380 (1862). See also, Town of Refugio v. Strauch, 29 S.W.2d 1041, 1045 (Comm. App., 1930); 10 E. McQuillin, Municipal Corporations § 30.32 at 687 (1966 Rev. Vol.); 39 Am.Jur.2d, Highways, Streets and Bridges § 184 at 561 (1968); 39 C.J. S. Highways § 137 (1944); 28 Tex.Jur.2d, Highways and Streets § 131 at 158, 160 (1961).

This order of discontinuance of the public use of the street did not, however, affect the *private* rights in the continued use of the street. This is clear from the decision in Texas Co. v. Texarkana Mach. Shops, 1 S.W.2d 928, 931 (Tex.Civ.App., Texarkana, 1928, no writ), where the court said: "The rights of abutting owners in an existing and used street may not . . . be taken away by the mere passage of an ordinance declaring it [the street] vacated."

In the case at bar, it is obvious that the City did not bar physical access to the plaintiffs or any abutting owner. Certainly, the ordinance "closing" the street did not bar access thereto. Although in our original opinion we spoke of "closing" of the street, we did not use the word in the sense in which it was used in Elston v. City of Panhandle, 46 S.W.2d 420, 421 [Tex.Civ.App., Amarillo, 1932, error ref.,

1. The act of adopting the "closing" ordinance by City's governing body was lawful, within its delegated powers, and there is no suggestion of any illegal or corrupt motive in connection therewith. Under these circumstances, I consider "motive" for the adoption thereof to be immaterial to any issue before us. Railroad Commission v. Galveston Chamber of Commerce, 105 Tex. 101, 145 S.W. 573, 580 (1912); Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, 969 (1937); Texas State Bd. of Examiners in Optometry v. Carp, 388 S.W.2d 409, 414 (Tex.1965); Farb v. State Banking Board, 343 S.W.2d 508, 513 (Tex.Civ.

App., Austin, 1961, error ref. n. r. e.); Travis County v. Matthews, 235 S.W.2d 691, 696 (Tex.Civ.App., Austin, 1950, error ref. n. r. e.).

The acceptance of the money from the Bank by City in consideration of the delivery of the quitclaim deed was authorized under the rule laid down in Blair v. Astin, 10 S.W.2d 1054, 1056 (Tex.Civ. App., Galveston, 1928, error ref.).

Significantly, I note that plaintiffs did not allege that City's act challenged here was ultra vires. Cf. Foster v. City of Waco, 113 Tex. 352, 255 S.W. 1104, 1106 (1923).

121 Tex. 553, 50 S.W.2d 1090 (1932)], where the court said: "The word 'closed' is used in the sense of termination of maintenance and not in the sense of preventing ingress and egress by obstructions."

I agree with counsel for the City as stated in the argument supporting the motion for rehearing:

"Thus, in our case, when the Bank acquired all the land *on each side* of the subject portion of the alley (as it is undisputed that it did) it became the owner of the fee to that entire portion of the alley, *subject to both the public easement and the private easement* in the alley. When the City passed the closing ordinance the public easement was removed and the Bank's alley-ownership was subject only to Appellants' *private* easement. This was the only effect of the closing ordinance. The Bank had no right to extinguish this private easement. The closing ordinance could not give it such right and did not purport to do so. We should add that Bank was fully aware of appellants' claim when it physically closed the alley." (emphasis in original)

To this, I would add that the Bank, being aware of plaintiffs' *private* rights in the alley, paid plaintiffs $35,000 for the release of such rights, a fact noted in our original opinion.

I adopt Justice Pope's language, concurring in Dykes v. City of Houston, 406 S.W.2d 176, 184 (Tex.1966), as applicable to the case at bar: "The majority opinion confuses peculiar rights in private easements with the general public's rights in closing and opening streets." Plaintiffs' peculiar private rights were not destroyed or damaged by the adoption of the ordinance. Indeed, as was said in Bowers v. Machir, 191 S.W. 758, 760 (Tex.Civ.App., Fort Worth, 1916, no writ): "The mere

passage of the ordinance did not give any cause of action against the city . . . The closing of the alley, if wrongful, and that *alone*, gave rise to a cause of action in plaintiffs' favor."

Breneman Street was closed and plaintiffs' damages were caused by the construction of the banking facility in a portion of the abandoned street. For this, plaintiffs accepted $35,000; and, having been paid once for the only cause of action they possessed, they may not now pursue the City on a non-existent cause of action.

*Secondly*: I recant my reliance upon Art. 4646a, V.A.C.S., now being convinced that it has no application to the case at bar. This statute merely denies the right of injunction against "vacating, abandonment or closing, by the City Council . . . of any street or alley . . . except at the suit of the owner or lessee of real property actually abutting on that part of such street or alley actually vacated, abandoned or closed." The premises which plaintiffs occupied under the lease did not abut the part of the alley which was vacated, abandoned, or closed.

Nor does § 2 of the cited statute have any application to our case. There were no "existing laws"—either statutory or decisional—giving plaintiffs a right to enjoin the closing by ordinance of a street or alley at the time of the passage of the act, nor has any such law come into existence since the adoption thereof.

*Thirdly*: I am apprehensive that we have inadvertently fallen into error in treating the question of impairment of access (and the damages flowing therefrom) as a fact question for determination by a jury.[2] Justice Steakley, in City of Waco v. Texland Corporation, 446 S.W.2d 1, 2 (Tex.1969), said: "[T]he resolution of the problem of whether access has been so im-

---

2. After reciting the evidence, we said: "Viewing this evidence and its inferences in the light most favorable to Landowner, as we must, we believe it shows material and substantial impairment of right to ac-

cess." This statement made in an opinion reviewing a judgment resting on a peremptory instruction is a determination that such evidence raises a fact issue for the jury upon a new trial.

paired that it can properly be said that the private easement in the street has been damaged is a threshold question of law for determination by the Court." We have held that it is a fact issue for determination by a jury while the Supreme Court says that it is a threshold question of law for determination by the Court. I would feel more comfortable with our opinion if we followed *Texland* and made the determination here and now, and adversely to plaintiffs.

*Fourthly*: I am convinced now that we erred in utilizing evidence of monetary damage caused by circuity of travel as evidence of denial of access. Essentially, plaintiffs' claim of damages results from their allegation that potential patrons traveling west on Travis Street cannot reach their property via Breneman. Plaintiffs do not contend, as indeed they cannot, that potential patrons cannot reach their property from Travis Street; for, to reach plaintiffs' premises from Travis Street, the potential patron would simply have to go around the block. The physical facts establish that there was no denial of access and, at best, only a requirement of circuity of travel.

In so treating the subject, we have run afoul of the rules enunciated in a series of cases by our Supreme Court. In City of Beaumont v. Marks, 443 S.W.2d 253, 257 (Tex.1969), the Court noted that "[d]iversion of traffic resulting in the necessity of using circuitous routes is not compensable." See also; DuPuy v. City of Waco, 396 S.W.2d 103 (Tex.1965); Archenhold Automobile Supply Co. v. City of Waco, 396 S.W.2d 111 (Tex.1965); City of Houston v. Fox, 444 S.W.2d 591 (Tex.1969).

*Lastly*: In the reply to City's motion for rehearing, plaintiffs say:

"The way Appellants see this Opinion, it leaves it for the Trial Court on a new trial to decide whether the purpose of the closure was for a private or public purpose.

"If the purpose is public, the Court has already said there has been a deprivation of access, and the question is condemnation damages. If the purpose is private, the question is damages at common law."

It is sufficient, at this point, for me to say that I do not subscribe to plaintiffs' view of the opinion and specifically disavow any intention of so holding in any of the particulars enumerated. If plaintiffs' counsel is correct in his interpretation of the opinion (and he may very well be as the opinion is presently written), I dissociate myself therefrom.

I would affirm the judgment of the trial court.