### INDUSTRIAL CO. v. TOMPKINS et al.
### No. 3387.

Court of Civil Appeals of Texas. Amarillo.
April 2, 1930.

Rehearing Denied April 30, 1930.

Leake, Henry, Wozencraft & French, of Dallas, for appellant.

Jas. J. Collins, A. A. Long, W. Hughes Knight, and H. P. Kucera, all of Dallas, for appellees.

RANDOLPH, J.,

This suit was originally instituted by appellant against R. V. Tompkins, auditor of the city of Dallas, J. Waddy Tate, mayor, and Earl Goforth, secretary of said city, in which a writ of mandamus was sought to compel said Tompkins, as such auditor, to countersign and officially approve a warrant in favor of appellant for the sum of $68,-298, alleged to have been ordered drawn in its favor under a board order passed by the board of commissioners of the said city on April 5, 1929, under the terms of which order the Industrial Company was awarded the above-named sum as a settlement of a controversy growing out of the opening, widening, and extension of South Lamar street in said city. The city of Dallas was not made a party to the said suit by the plaintiff, but was permitted to intervene on the ground that it was the real party at interest in the litigation.

On hearing by the district court the application for mandamus was refused, and, from such refusal to grant same, this appeal has been taken.

The plat for the addition into which South Lamar street was extended, the intersection of that street with other streets in said addition, etc., are sufficiently stated in the case of Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, and will not be repeated here. However, the controversy between the Industrial Company and the defendants in the case at bar requires that a brief statement be made of the facts and circumstances surrounding the contract between the Industrial Company and the city of Dallas, upon which the company bases its right to the issuance of the warrant.

The change in the direction and location and the widening of South Lamar street had been contemplated by the city for a number of years, in order to accommodate the increased traffic between the south portion of the city and the business section. Efforts to that effect finally culminated in the transactions alleged by the company to have occurred between it and the city, which transactions we will now briefly state.

It is alleged in the appellant's petition that the parties interested in the change, extension, and widening of South Lamar street, having been unable to make satisfactory arrangement with the owner of the particular tracts of land herein involved, for the routing of South Lamar street and the widening and extension of same, it was suggested by them that the Industrial Company should acquire the said tracts of land, and, as an inducement to it to do so, it was represented by those promoting the improvement and officers of the city of Dallas representing said city and having authority to represent it in connection with said inducement that if the plaintiff would buy the plats of ground and would convey the necessary right of way for the extension of South Lamar street, as widened, extended, and connected with Cockrell avenue, the city of Dallas would close certain streets and alley intersecting the tracts of land to be acquired by the appellant, and that appellant would thereby acquire, as a result of the closing of said streets and alley, a valuable piece of industrial property situated in a busy and settled portion of the city of Dallas, in a solid block, without being cut up by its intersecting streets and alley; that, induced by all representations and promises, the appellant purchased and acquired title to all of the land situated in the city of Dallas, lying between Cockrell avenue, Burnett street, Austin street, and Alexander street—the said property being

shown on the exhibit to the petition; that it was agreed that said streets and alley were to be physically closed upon the ground so as to give appellant a solid block of land not to be intersected or cut or divided by any street or alley.

The appellant's petition further alleges as follows:

"That contemporaneously with or shortly following the purchase of the said property by the plaintiff and in pursuance of the promises and understanding which had induced the plaintiff to purchase the said property, the City of Dallas entered into formal agreement with the plaintiff, as evidenced by ordinances duly passed and other action of the governing authority of the City of Dallas, that the said streets and alley intersecting the land so purchased by plaintiff would be physically closed so that the plaintiff would have a solid block of land, lying between and bounded by the four said streets above named, uninterfered with or cut up by its intersecting streets and alley and the plaintiff in pursuance of the understanding and agreement had between the plaintiff and the City of Dallas conveyed to the City of Dallas and vested title in it to the tract of land necessary for the extension of the widened South Lamar Street into and connected with Cockrell Avenue.

"That the plaintiff fully complied with the terms of the agreement and performed all of the obligations undertaken by him to the City of Dallas in connection with the proposition. That in consideration of the undertaking, covenants and agreements of the plaintiff, all of which were fully performed by the plaintiff, the City of Dallas covenanted and agreed that South Lamar Street between Alexander Street and Burnett Street (as the same had existed prior to the opening of the connection in its widened condition over the land conveyed by plaintiff of South Lamar Street with Cockrell Avenue), and Dexter Street, as the same existed between Blocks B-1092 and C-1095 and D-1093 and D-1096, and of the alley as it existed between Block B-1092 and D-1093 and C-1095 and D-1096, be physically closed, all of which said agreement and covenant the City of Dallas has wholly failed to comply with and perform. That the said streets and the alley, which the City failed to close as it covenanted to do, were the streets and alley intersecting the said tract of land purchased by the plaintiff bounded by Cockrell Avenue, Burnett Street, Austin Street and Alexander Street, as shown by the plat attached to this petition, marked Exhibit 'A,' and made a part of this petition to the same extent as though expressly written herein.

"That the City of Dallas was entitled to a reasonable time in which to comply with its contract, undertaking and obligation to close the said intersecting streets and alley in the said tract of land which had been purchased by the plaintiff, which said reasonable time for performance of its said contract on the part of the City expired on or about June 22nd, 1927, but the City of Dallas, notwithstanding the expiration of the said reasonable period of time for performance on its part, has wholly failed and refused to perform the same.

"That as a result of the failure of the City of Dallas to comply with the said contract and on account of its breach of the same, the plaintiff shows to the Court that the plaintiff was damaged in the amount of the value of the land contained in the said intersecting streets and alley which the City of Dallas failed to close and to deliver to the plaintiff in a closed condition, as the City of Dallas had agreed and bound itself to the plaintiff to do, and also in the amount of the depreciation in value of the balance of the tract of land of the plaintiff not contained in the said intersecting streets and alley on account of the failure of the City of Dallas to close and deliver to the plaintiff in a closed condition the said intersecting streets and alley, as the City of Dallas had agreed to do.

"That the value of the land contained in the said intersecting streets and alley which the City of Dallas agreed to close and deliver to the plaintiff in a closed condition, is itemized as follows: (Itemized statement shows claim to be for the sum of $74,453.00.)"

Appellant's petition further alleges damages in the sum of $68,585 to the residue of the tract purchased by it.

Appellant further alleges that, after the failure of the city of Dallas to comply with the said contract, appellant sought from the authorities of the city an adjustment and settlement of his damages growing out of the breach of the contract, and it was thereafter agreed between them that same should be submitted to arbitration and the same was, by the authority of the board of city commissioners and by its ratification upon an understanding with the appellant, submitted to a board of ratification to determine and make report as to the respective rights and obligations of the parties; it being a part of the agreement for arbitration which was in writing, in effect, that appellant should select one arbitrator and that the city of Dallas should select one, these two, in case of disagreement, to select a third, and, by the terms of the agreement, the determination of these arbitrators was to be binding upon the parties.

That the matter proceeded to arbitration and the arbitrators reported in writing that the city of Dallas should pay to the appellant the sum of $68,298, which report was made and delivered to each of the parties, and which report also required that the city of Dallas should do various other things in addition to the payment of the money; that

an arbitration was fully completed and that it became and was a legal duty of the city to comply with and perform the terms of the arbitration, which the city did not do, but, on the contrary, continued its negotiations with appellant looking to an adjustment of the appellant's claim on a lesser basis than that required by the report of the arbitrators, and finally a settlement of the claim of appellant was agreed to under the terms of which agreement by resolution duly passed and adopted by the board of city commissioners it was provided that the city would pay to the appellant, at once, the sum of $68,298, and ordered that the check or warrant for that amount should be issued and delivered to appellant; that the order so entered did not otherwise fully comply .with the terms of the arbitration, but the appellant accepted said order in writing, notwithstanding said resolution and the duty of appellees, that each failed to sign and refuses to issue, sign, and countersign the said check or warrant.

A further statement will be made, as necessary, in the disposition of the questions we shall discuss.

The charter of the city, under article 2, section 1, provides:

"The City of Dallas made a body politic and corporate by this act shall have perpetual succession, may use a common seal, may sue and be sued, may contract and be contracted with, implead and be impleaded in all courts and places, and in all matters whatever, may take, hold and purchase lands as may be needed for the corporate purposes of said city, and may sell any real estate or personal property owned by it; perform and render all public .services and, when deemed expedient, may condemn property for public use, within or without the City; and may hold, manage and control the same; such condemnation proceedings to be governed and controlled by the law now in force in reference to the condemnation of the right of way of railroad companies and the assessment of damages therefor, and shall be subject to all the duties and obligations now pertaining to or incumbent upon said City, as a corporation, not in conflict with the provisions of this act, and shall enjoy all the rights, immunities, powers, privileges and franchises now possessed and enjoyed by said city and herein granted and conferred."

Among the other duties and powers of the board of city commissioners, it is provided in the charter in article 3, section 19, "the Board of Commissioners shall have the management and control of the finances of the City except as otherwise herein provided. They shall have the power to appropriate money and provide for the payment of debts and expenses of the City; to provide by ordinances special funds for special purposes provided for under the provisions of this charter, and to make the same disbursable only for said purposes, and to impose proper penalties for enforcing the same; to provide by ordinance for the payment of any existing and outstanding indebtedness and for the payment of any bonds that may from time to time be issued, and shall for such purposes have the power to levy, assess and collect a special tax."

The selection and appointment of the auditor is provided for in section 3, article 4, and his powers and duties are defined as follows:

"It shall be the duty of the Auditor to examine in detail all bills, accounts and claims against the said City, and if found correct, to sign his name in approval thereof, but if found incorrect he shall return them to the party presenting the same for correction. He shall be the general accountant of the said City, and shall keep in books regular accounts of all real, personal and mixed property of the said city; of all receipts and disbursements of money; and under proper heads, separately, each source of receipt and the cause of each disbursement; and shall also keep an account with each person, including the officers who have money transactions with the said City, crediting amounts allowed by proper authority, and specifying the particular transaction to which such entries apply. It shall be his duty at least once in each month to examine the books of account of all officers of said City charged with the receipt and disbursement of money, and if they be found incorrect, to at once make a report in writing of the same to the Mayor. It shall also be his duty to examine all warrants and countersign the same after appropriation has been duly made to pay the same by Board of Commissioners. He shall certify to the correctness of all monthly reports which shall be published by the Board of Commissioners as required by Article 3 hereof. It shall be his duty to ascertain whether any expenditure made or proposed to be made by the City is excessive, either in the price of the thing purchased, the computation of the charge or otherwise, and if he shall so find, he shall make report thereon to the Board of Commissioners and state the facts in his certificate attached to the monthly report to be published, as herein provided for. He shall receive for his services a salary of three thousand ($3,000) dollars per annum, payable in equal monthly installments, and shall give bond for the faithful .performance of his duties in the sum of ten thousand ($10,000) dollars, with two or more good and sufficient sureties, to be approved by the Mayor and by the Commissioner of Finance and Revenue."

Article 2, section 4: "To lay out, establish, open, alter, widen, lower, raise, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and to vacate and close the same, to sprinkle and care for the streets, and to regulate the use thereof; and to require the removal from the

streets and sidewalks of all obstructions, telegraph, telephone, street railway or other poles carrying electric wires, signs, fruit stands, show cases, and encroachments of every character upon said streets and sidewalks; and to vacate and close private ways."

The facts in the case stated briefly are that the negotiations for the straightening and widening of South Lamar street had been going on for a number of years, when it was suggested to appellant by the parties interested in the promotion of such scheme that appellant purchase the blocks of land in controversy, and through which the street or streets and an alley run, and that it could then sell the city right of way for the street extension. This was accordingly done by the appellant under the agreement that the city would then vacate a part of Lamar street and close it. The city failed to close the street but, on receipt of the deed from appellant, the city paid to appellant the sum of $2,800, the cash consideration for that part of the block of land which was appropriated by said South Lamar street in its new location. The appellant paid the owners of the whole of the blocks in controversy a sum of $87,250. Upon the failure of the city to close the street, as it is alleged to have been contracted for, the parties entered into negotiations for a settlement. The controversy between the parties was arbitrated and, upon the city failing to comply with the arbitration, further negotiations occurred, resulting in an order being passed by the city commission, over the veto of the mayor, ordering the payment in settlement of appellant's claim of a sum equal to the amount of the award of the arbitrators.

A change of administration coming on, the city commission passed an ordinance repealing the order requiring the issuance and delivery of the warrant to the appellant, and upon refusal of the officers of the city acting under the new administration to comply with said order, and issue said warrant, appellant thereupon filed suit as stated above.

While the appellant presents several contentions, including the binding force of the arbitration and the lack of power on the part of the new city commission to repeal the ordinance authorizing the payment of the warrant, we can discuss all questions as they are interrelated.

█ If we concede that the city commission had no power to repeal the ordinance for the payment of the warrant, and if we recognize the binding force of an arbitration award, legally allowed, those propositions do not conclude the matter of the appellant's right to have the mandamus issued. The decision in the case of Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S. W. 722, does not apply here for the reason that the board of education had, in that case, full power to do the things it did do, and the respondent in that case was refusing to act in a matter that was purely ministerial. In the case at bar, if the view we take of the controlling question is correct, the city of Dallas had no power to enter into contract to physically close the street and it could not, by any contract, validate a void contract or give life to it. If the original was void, the city, by agreeing to arbitrate the matter involved, could not estop its officers from pleading its invalidity. If the city did not have the power to enter into the contract, it could not be held liable for a breach of the contract's terms by estoppel.

█ Whatever right the city had, by virtue of the Constitution or statutes, its powers are essentially those of a trustee for the benefit of the public. Whatever may be the quality or quantity of the estate held by the city in its streets, that estate is essentially public and not private property, and the city, in holding it, is the agent and trustee of the public. 1 McQuillen, Municipal Corporations, 638, § 248, (229).

█ The record shows that the portion of South Lamar street in question extended into a platted addition to the city of Dallas; that the plat of said addition shows lots, blocks, streets, and alleys. The presumption is, therefore, that all parties had accepted the streets and alleys in said addition for public uses and purposes. There is no showing in the record that the street, as it existed in said addition at the time of the initiation of the transaction sued on by appellant, was owned by the city in fee simple. This being true, a contract by the city to close the street, not being for a public purpose, and wholly ignoring the right of abutting landowners to the use of same in connection with the use of their property, was wholly void.

In the case of Stephens v. City of Dublin (Tex. Civ. App.) 169 S. W. 188, the city of Dublin, for a purpose of protecting the children attending a school and in the interest and for the benefit of the Dublin independent school district, passed an ordinance closing a portion of College street, which had extended between two blocks owned by the school district. The appellant Stephens applied for a writ of injunction to restrain the city from closing the street. This writ of injunction was denied by the trial court, and, on appeal, Chief Justice Conner of the Fort Worth Court of Civil Appeals held that, where the complaining party owns property abutting on the street but not upon that portion closed, the owner is remitted to an action for his damages, if any. But, where he owns property abutting on the closed street, the city is not authorized to close the street, and injunction was accordingly granted against the closing of the street.

See, also, Spencer v. Levy (Tex. Civ. App.) 173 S. W. 550, 557; Bowers v. Machir (Tex.

Civ. App.) 191 S. W. 758; Boone v. Clark (Tex. Civ. App.) 214 S. W. 607, 609.

In the case at bar, the appellant is seeking to recover for the breach of a contract entered into by the city with it to close South Lamar street, a contract which the city had not the power to make, in view of the fact that an abutting owner was contesting the closing. The appellant was charged with notice of the illegality of the contract. The record discloses facts which put appellant upon notice that the contract was ultra vires.

In support of our holdings herein, we cite Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, 505. This was a suit growing out of the transactions here in question, and in some respects it is a companion case to the case at bar. The Dallas Cotton Mills, an abutting property owner on the street attempted to be closed, brought the suit to restrain the city of Dallas from physically closing the street. In that suit, as indicated, the Industrial Company was a party. The city of Dallas, in its pleadings, explained the passage of the ordinance vacating and closing the street—that said ordinance "does not physically close the said street, and the city of Dallas has no intention [to do so] and no further jurisdiction over said portion of South Lamar street and has no interest in who secures title to same, and to what use is made of same, and as to whether the same is actually closed or not; that the city of Dallas in law has no concern with such matters and is not planning and has not planned to physically close the portion of South Lamar street ordered vacated and closed as a public street, and that such matters do not concern the city of Dallas."

In that case the Commission of Appeals holds that the language of the ordinance is susceptible to the interpretation put on it by the city's pleadings.

It appearing from the record that if there was an attempted vacating of property, such vacating was not for public use. The Commission of Appeals in that case holds that "if such was not to be the correct interpretation that the operation of said ordinance would be restrained by 'superior law,' " and say, also, "if the City's averments are to be credited, they exclude all possibility of the existence of a public use in the actual closing of the street. But if, in this respect, they are not to be given a conclusive effect, the absence of public interest in the matter is plain, nevertheless, for user of the old street as a passageway by Dallas Cotton Mills, and others entitled, manifestly cannot to any extent or in any way burden, retard, or prevent accomplishment of the declared purpose of altering the route of 'travel' from 'South Dallas into the commercial and business section,' which, together with relinquishment of the public easement, is the only 'public purpose' claimed.

Whether physical closing of the street, in relation to Dallas Cotton Mills, should be classed as a 'taking' of its property or as a 'destruction' or a mere 'damaging' thereof, it would be forbidden because the action would not be for or on account of the 'public use.' The Industrial Company therefore did not, either by purchase or through action of the city, acquire right to exclude Dallas Cotton Mills from use of Lamar street as a passageway or to obstruct such use, and injunctive relief against it was proper."

The appellees interposed a plea of estoppel against any recovery by appellant in this case: That on December 12, 1922, Dallas Cotton Mills filed a suit in the district court of Dallas county, Tex., the same being No. 45510–C, in the Forty-Fourth judicial district of Texas, complaining of the Industrial Company and the city of Dallas, and alleging in substance that Dallas Cotton Mills and the Industrial Company were owners of certain tracts of land, having a common source of title in the original subdivision owner of Blankenship and Blake's Cotton Mills addition to the city of Dallas, and that the Dallas Cotton Mills and its predecessors in title had purchased that certain tract of land bounded by Cockrell avenue on the east, Austin street on the west, Burnett avenue on the north, and Corinth street on the south, and that said Dallas Cotton Mills and its predecessors in title had acquired said property upon the representations of the dedication of said addition, and that South Lamar street was an open thoroughfare leading from Burnett avenue, at right angles, north to Alexander avenue. That the Industrial Company was the owner of all those certain lots, tracts, and parcels of land bounded on the west by Austin street, on the south by Burnett avenue, on the east by Cockrell avenue, and on the north by Alexander avenue.

That the Industrial Company, who was one of the parties defendant in said cause No. 45510–C, never, at any time, contracted with the city of Dallas or made an agreement of any kind or character with the city of Dallas, whereby the city of Dallas became bound and obligated to convey to the Industrial Company a fee-simple title to that portion of South Lamar street lying between Alexander avenue on the north and Burnett avenue on the south, and, in addition, the city of Dallas never agreed to contract to convey to the Industrial Company a fee-simple title to Dexter street or the alley running parallel with Dexter street and lying between Dexter street and Alexander avenue. That the Industrial Company, who was the defendant in said cause of action, made the following statements and declarations in its motion to dissolve the temporary restraining order issued in said cause, as appears from said motion, filed December 30, 1922, which said pleading is on file in said cause in the office of the district clerk

of Dallas county, Tex.; and paragraph 3 thereof reads as follows:

"This defendant further expressly denies that it and the City of Dallas have entered into and proposed to at once consummate an arrangement or an agreement by virtue of which the City of Dallas is to vacate Lamar Street between Alexander and Burnett Avenues, and convey such title as it may have, if any, to said street to this defendant for its own private use and benefit, and further denies that any action has been taken on the part of this defendant or of the City of Dallas for the private use and benefit of this defendant in connection with any of the property described in plaintiff's petition, but expressly alleges on the contrary that all such acts and conduct on the part of the City of Dallas and this defendant with regard to the property mentioned in plaintiff's petition were expressly done and performed in order to accommodate public travel and to furnish a greater convenience for travel, as well as to establish a commodious means of accommodation for travel from South Dallas into the commercial and business section of the City of Dallas, and were done solely to alter and change Lamar Street so as to form a connection with Cockrell Avenue across the property of this defendant in such a manner as to afford a more commodious means of public travel from the business district into South Dallas and from South Dallas into the business district."

"That acting in accordance with the purposes of the ordinance as above expressed, and for the purpose of aiding and assisting the City of Dallas in its governmental and political capacity in its effort to accommodate public travel and for the convenience of the public in altering and changing that portion of South Lamar Street where the same intersects Alexander Avenue, this defendant on or about the 11th day of December, 1922, made, executed and delivered to the City of Dallas its warranty deed to the following described property, to-wit: (Not necessary to describe), said property being the same property described in the warranty deed annexed to this answer, and marked Exhibit 'B.' That all of said allegations in said motion to dissolve were made under oath and sworn to by Tom B. Burnett on the 29th day of December, 1922, as the President of the Industrial Company and as the Agent of said Company."

The evidence fully sustains the plea of estoppel.

The rule as laid down by the Commission of Appeals, in answering a certified question from this court, is: "It may be laid down as a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, where the latter position is to the prejudice of the adverse party, and the parties and the questions are the same." Smith et al. v. Chipley (Tex. Com. App.) 16 S.W.(2d) 269, 276.

In the case at bar, it appears that the question of the contractual liability alleged by appellant against appellees is involved in the case of Dallas Cotton Mills v. Industrial Co., supra, in that, in the Cotton Mills Case, the Industrial Company expressly denied in its answer "that it and the City of Dallas have entered into and proposed to at once consummate an agreement or arrangement by virtue of which the City of Dallas is to vacate Lamar Street between Alexander and Burnett Avenues, and convey such title as it may have, if any, to said street to this defendant for its own private use and benefit," together with other allegations material to sustaining such plea, and, therefore, such pleading and proof estops the appellant from taking the position in the case at bar that it is entitled to recover for breach of the contract for the city failing to perform it.

For the reasons stated, the trial court's judgment is affirmed without discussing other questions presented in this appeal.