**E. F. MOORE and R. D. Kirk, Individually and as Class Representatives, Appellants,**

v.

**Lester MEYERS et al., Appellees.**

No. 15633.

Court of Civil Appeals of Texas.

Fort Worth.

July 8, 1955.

Rehearing Denied Sept. 16, 1955.

Irvin J. Vogel, Wichita Falls, for appellants.

W. W. Ballard, Wichita Falls, for appellees Lester Meyers et al.

Jack Connell and Arch Dawson, Witchita Falls, for appellees Wichita County Water Imp. Dists. Nos. 1 and 2.

BOYD, Justice.

Appellants E. F. Moore and R. D. Kirk, individually and as class representatives, appeal from a judgment decreeing that Wichita County Water Improvement Districts Nos. 1 and 2 are not required to furnish irrigation water to appellants' lands.

The following statement of the nature and result of the suit is taken from appellants' brief:

In April of 1901, a private corporation, Lake Wichita Irrigation and Water Company, was formed, with a charter life of 50 years. It built Lake Wichita for the purpose of selling water to the City of Wichita Falls, Texas, and for irrigation. It acquired rights of way and built a canal from its lake through the City of Wichita Falls and into an area to be irrigated South and East of Wichita Falls.

On June 15, 1903, Lake Wichita Irrigation and Water Company sold a permanent water right to 2,000 acre feet of water, that is one acre foot per year for 2,000 acres of land owned by Henry Sayles, for the sum of $80,000; and the contract of sale obligated Lake Wichita Irrigation and Water Company to deliver said water through its canals, by gravity flow, to the 2,000 acres of land; and each of said acres was charged with an annual service charge of $2 per year during the charter life of the company. Such water rights ran with the land. The 2,000 acres of land is now owned by appellants and Lester Meyers et al.

Lake Wichita Irrigation and Water Company sold the lake and the canal, down to a point near the Texas Electric Service Company, to the City of Wichita Falls, Texas, but reserved the 2,000 acre feet of water previously sold to Sayles, as well as the easement right to run this 2,000 acre feet of water through the canal. It retained the canal system leading from the Texas Electric Service Company light plant down to the lands of Lester Meyers et al., and appellants.

In 1919, Wichita County Water Improvement District No. 1 was created, under Chapter 87, Page 172 et seq., of Acts of the Regular Session of the Legislature of 1917, and converted into a Conservation and Reclamation District under Section 59, Article 16, of the Constitution and Statutes pursuant thereto, which district covered 15,000 acres, including the City of Wichita Falls, and the 2,000 acres of land above referred to. The plans and specifications of Wichita County Water Improvement District No. 1, while including the above 2,000 acres of land, did not mention irrigation of such lands from the system created by Wichita County Water Improvement District No. 1. Such 2,000 acres of land being included in the district have paid ad valorem taxes along with all other property in said district. On December 18th, 1920, Wichita County Water Improvement District No. 2 was likewise created and converted into a Conservation and Reclamation District, and it owns .33.89% of the system of District No. 1, and shares expenses on that basis.

Lake Wichita Irrigation and Water Company continued to operate its irrigation system and serve water, by gravity flow, to such of the 2,000 acres of land as desired it until December 24, 1924, at which time Wichita County Water Improvement District No. 1 undertook to purchase all of the assets of Lake Wichita Irrigation and Water Company in this manner. By resolution of the board, Wichita County Water Improvement District No. 1 authorized the purchase of all of the stock of Lake Wichita Irrigation and Water Company and the transfer of all its assets to Wichita County Water Improvement District No. 1 and the dissolution of the charter of Lake Wichita Irrigation and Water Company. The sum of $2,500 was paid for said stock, and at the instance of said Wichita County Water Improvement District No. 1, the stock of Lake

Wichita Irrigation and Water Company re-issued to certain of the Directors of Wichita County Water Improvement District No. 1, as Trustees, and by deed they conveyed to Wichita County Water Improvement District No. 1 all of the assets of Lake Wichita Irrigation and Water Company, including easements, rights of way, water rights, water rights contracts, etc., and immediately thereafter caused the Charter of the Lake Wichita Irrigation and Water Company to be dissolved.

From and after December 24, 1924, Wichita County Water Improvement Districts Nos. 1 and 2 took charge of the canal system formerly operated by Lake Wichita Irrigation and Water Company, serviced it, made repairs to it, and delivered irrigation water, by gravity flow, through it to appellants herein, whose lands are contiguous and adjacent to the canal system, and levied a charge of $2 per acre per year for such service, and collected such charge from those patrons who were contacted by the ditch rider or who came to the office of Wichita County Water Improvement District No. 1 and paid.

In 1951, a question having come up as to the duty and right of Wichita County Water Improvement Districts Nos. 1 and 2 to operate the irrigation service to appellants' lands, appellants filed a suit, individually and as class representatives, for a declaratory judgment against said districts. Judgment was rendered on August 4, 1951, in Cause No. 48,463–A, requiring said districts to continue serving water through the presently existing ditches and canals to appellants' lands, and fixing the service charge at $2 per acre. The judgment provided that said service charge could be made against each of the 2,000 acres of land covered by the Sayles contract. Appellants actually owned only about 700 acres of said 2,000 acres covered by the Sayles contract.

In the year 1953 it became apparent that deterioration had taken place in said system that would require permanent repairs costing approximately $18,000 before water would again flow through said system to appellants' land; although there is an abundant supply of water in Lake Wichita, irrigation water has not been served to appellants' lands since 1953.

The present suit was filed by Lester Meyers et al., individually and as class representatives, setting up, among other things, that their land, a part of the original 2,000 acres covered by the Sayles contract, had been converted into residential and business property and had been abandoned for irrigation; and that they did not desire nor need irrigation water and did not desire to pay for same, and also sought to get an injunction to restrain the spending of any money by the defendant districts in repairing said irrigation system. Wichita County Water Improvement Districts Nos. 1 and 2 were made defendants, as well as appellants Kirk and Moore, individually and as class representatives. Plaintiff's petition is lengthy, and seeks, among other things, that the judgment in Cause No. 48,463–A be set aside; and, in the alternative, that it be set aside in so far as it permits a service charge against their lands for irrigation service which they do not need nor want. Wichita County Water Improvement Districts Nos. 1 and 2 filed their second amended original answer, which largely makes the same allegations of defense to the judgment in Cause No. 48,463–A as were made by Lester Meyers et al., and prayed that "the judgment in Cause No. 48,463–A be reviewed and its invalidity declared". Appellants answered, among other things, pleading as they had in Cause No. 48,463–A, and pleading the judgment therein, and prayed that the water improvement districts be ordered to repair said canal system and serve water to appellants' lands for irrigation.

Judgment was entered in the present suit that Wichita County Water Improvement Districts Nos. 1 and 2 are not the owners of the ditches serving appellants' lands (that is on and across the 2,000 acres of the Sayles contract), and that said districts are not required to repair or service said ditches or serve water for irrigating appellants' land through the same, either by reason of the Sayles contract or by the laws of the State of Texas, and denying any relief not expressly granted.

The court found and concluded that: the districts are not the owners of the canals, ditches, flumes or laterals on and across the lands in question; they are not estopped to disclaim such ownership; they are not required or obligated to operate, maintain, repair and rebuild the same; they are not required to make water available to said lands for irrigation purposes by reason of any agreement, purchase, assumption or contract by and between the Lake Wichita Irrigation and Water Company and Wichita County Water Improvement District No. One, or under the laws of this state; that the plans and specifications and estimates of cost of the storage lakes and canal system of District No. One, as proposed and voted on in the formation of said district, and the creation of the bonded indebtedness therefor to be paid for by taxation on an ad valorem basis, did not comprehend or include the acquisition of the system of the private water company, or of irrigation by the new system of the district of the 2,000 acres in question, or the building of any canal or lateral across any part of said 2,000 acres, or the use of any water from Lake Wichita; that Lake Wichita is not within either of said districts; and that the judgment in Cause No. 48,463–A is not res judicata as to the issues involved in this suit.

Appellants assign as error the holdings that the districts are not the owners of the system of ditches contiguous to and adjacent to appellants' lands; that the districts are not estopped from disclaiming such ownership; and that the districts are not required under the law to furnish irrigation water to appellants' lands.

Article 11, § 3, of the Texas Constitution, provides that "No county, city, or other municipal corporation shall hereafter become a subscriber to the capital of any private corporation or association, or make any appropriation or donation to the same, or in anywise loan its credit;" and Article 7676, Revised Civil Statutes, provides that "No district created or existing or to be created under the provisions of this chapter shall have the right to become a party to or purchase, or hold under or assign or seek to enforce or receive the fruits or benefits from any contract between any land owner and private canal company or corporation made prior to the formation of such district, but all rights and privileges owned or possessed by such district are those arising or inherent in such district by virtue of this chapter."

Appellants do not contend that District No. One assumed any obligations under the contracts existing between the landowners and Lake Wichita Irrigation and Water Company; but they insist that title to the remaining assets of that Company passed to the district, including title to the ditches and canals which are contiguous and adjacent to appellants' lands; and that the districts are therefore required to furnish irrigation water to appellants' lands upon such terms as are fair and just.

Ball v. Rio Grande Canal Co., Tex.Civ. App., 256 S.W. 678, 680, error refused, was a suit by a private irrigation company for water charges alleged to have accrued both before and after the company sold its system to an irrigation district created under state laws. The question for decision was whether the private company breached its contract to furnish water by disposing of the system. The court said: "It is the well-settled law that irrigation companies organized for the purpose of irrigating lands are, in their nature, quasi public corporations, and persons holding lands contiguous to their canals are entitled to receive water from such companies as a matter of right, when paid for, limited only by prior contracts or by such other limitations as are imposed by law. * * *

"Just a few days after appellant purchased the property at foreclosure sale * * * the Rio Grande Canal Company sold its entire system to Cameron County Water Improvement Company, an irrigation district created by virtue of chapter 2 of title 73 of the Revised Statutes and the amendments thereto.

"In such a case it cannot be presumed the successor corporation would carry out, in the face of the statutory law, its predecessor's obligations, because such an obli-

gation, express or implied, would be directly in the face of our statute, * * *." The court quoted what is now Article 7676, and went on to say: "It is useless to discuss the reason that brought about such legislation. Its terms are plain and unambiguous, and we must give effect thereto. * * *

"It must be seen that when appellee sold and assigned its system to a like corporation that could not assume and carry out its contract because prevented by the plain provision of the law, it placed itself in a position where it could not perform its contract * * *."

It would appear that the facts in the cited case were somewhat analogous to the facts in the instant case. It seems that there the land involved was contiguous to the canals belonging to the private irrigation company; that is true in this case. The private company undertook to sell its system to an irrigation district, a municipal corporation created under the laws of the state; that is also true in this case. While the district was not a party to the suit, in the disposition of the question before the court it was necessary to consider the district's responsibility to furnish irrigation water to lands contiguous to the canals it undertook to purchase from the private irrigation company. It was held that the district was prevented by the plain provisions of the statute from carrying out the obligations of the private company. There is nothing in that opinion to show whether in the creation of the district it was contemplated that irrigation water would be furnished to the lands involved.

■ Since it was not in the contemplation of the people who created District No. One that the district's funds would be used in building or repairing a system to furnish irrigation water to the lands in question, we think that the contract between the district and the private company was ineffectual to impose that duty upon the district.

■■ Appellants insist that the districts are estopped to disclaim ownership of the irrigation system and ditches formerly belonging to the private corporation. We believe that when a municipal corporation has the power to enter into a particular contract, but the power is exceeded in the method of its exercise, the contract may be ratified or the corporation may be estopped from asserting its invalidity. Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841. But if in our case the Water Improvement District was without power to make the contract under which it is alleged to have acquired the ownership of such property, we are of the opinion that the district is not estopped to assert the invalidity of that contract. "All acts of the corporation (municipal) beyond the scope of the powers granted to it are void. An act which is wholly beyond the powers and jurisdiction of the corporation—that is, an act not authorized by law or color of law— is absolutely void; it is subject to collateral attack by any one whenever and wherever its validity is called in question." 30-A Tex.Jur., p. 354, sec. 355. And on page 356, sec. 357, of the same volume we find the following: "But the doctrine of estoppel cannot aid that which never had any legal existence; nor can a municipality be estopped by ultra vires acts or unauthorized or illegal conduct, or by statements on the part of its officers, even though it has received and accepted the benefits which have accrued." See also Noel v. City of San Antonio, 11 Tex.Civ.App. 580, 33 S.W. 263, error refused; Industrial Co. v. Tompkins, Tex.Civ.App., 27 S.W.2d 343, error refused; 38 Am.Jur., p. 185, sec. 509.

We have considered all of appellants' points, and believe that error is not shown.

The judgment is affirmed.